[No. D059930. Fourth Dist., Div. One. Aug. 30, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
VERA NELSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts III and IV.

### COUNSEL

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton, Melissa Mandel, Alana Cohen Butler and Sabrina Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**McCONNELL, P. J.**—Vera Nelson appeals an order recommitting her to the State Department of Mental Health for one year as a mentally disordered

offender (MDO). (Pen. Code, § 2960 et seq.) Nelson contends the trial court erred by (1) admitting the details of hearsay evidence in medical reports on which expert witnesses relied in forming their opinions that by reason of her severe mental disorder she continued to pose a physical threat to others; (2) allowing expert witnesses to instruct the jury on MDO law and usurp the jury's factfinding role; and (3) inadequately instructing the jury. We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2002 Nelson was living in a care facility for the mentally ill. Nelson and her roommate had been drinking in their room and an argument erupted. Nelson grabbed her roommate and flung her across the room, causing her to hit a dresser and fall. While she was lying on the floor, Nelson beat her and kicked her in the head, yelling "get up bitch." Several days later the roommate died from a brain injury.

In 2004 the People filed an information charging Nelson with voluntary manslaughter (Pen. Code, § 192, subd. (a); count 1) and battery with serious bodily injury (Pen. Code, § 243, subd. (d); count 2). As to count 2, the information alleged Nelson personally inflicted great bodily injury within the meaning of Penal Code section 1192.7, subdivision (c)(8).

Nelson pleaded guilty to count 1 in exchange for a stipulated three-year prison term and the dismissal of count 2 and the personal infliction allegation. In March 2005 she was committed to Patton State Hospital (Patton) as an MDO, and in 2008, 2009, and 2010 the court issued orders granting the People's petitions for one-year extensions of her commitment.

In November 2010 the People petitioned for an additional one-year extension of Nelson's commitment. A jury trial was held in June 2011. In a motion in limine, the prosecution sought an order allowing it to submit all reliable evidence on which its experts reasonably relied.

The People sought to introduce "Interdisciplinary Notes" made by Patton staff members recording three incidents of Nelson's aggression against other persons during the preceding year. One of the incidents began about 8:50 p.m. on January 2, 2011, and continued to about 1:00 a.m. the next day. Nelson complained to staff that her roommate was playing her radio too loudly. Staff told the roommate to turn the radio down and she complied. Staff left the room, and a few minutes later they heard yells for help. Staff returned and found Nelson choking her roommate. Staff was required to separate Nelson from her roommate. Nelson stated, "that bitch won[']t let me sleep, she turned her radio up again." Nelson was given medications.

Before long, Nelson attempted to return to her room. When staff attempted to redirect her, she picked up a trash can and threw it at staff, requiring them to activate a safety alarm. When reinforcements arrived, Nelson began swinging at staff with a closed fist. She continued "to fight and struggle," and she was placed in "5 point restraints for protection of others." From that point until the incident ended, Nelson continued to "mistreat" staff and spit at staff. She told staff, "I'm going to fuck you all up, I am going to one by one," and, "I'm going to get all of you one by one. I'll kill you."

On the evening of January 4, 2011, Nelson grabbed another patient by her upper arms and threw her to the floor. Approximately 10 minutes later, when staff was counseling Nelson, she ran toward the patient as if to attack her again. Staff grabbed Nelson's shirt to hold her back, but the shirt tore and she grabbed the patient and would not let go. Nelson "began hissing, spitting and kicking at staff." Staff wrestled Nelson to the floor and placed her in restraints, as she yelled, "I'm going to kill all you bitches," "I'll let you burn," "I'll blow your heads off with a shotgun," and "Keep me in seclusion and I'm going to show you all what's going to happen tomorrow night." Again, Nelson was medicated.

The third incident occurred on October 12, 2010. A staff member named Dean heard yelling coming from a bathroom. Dean opened the door of the bathroom as Nelson was starting to leave. Dean went to a stall and found a patient sitting on the toilet screaming, "She hit me. Look at my eye." Dean noted "slight redness and abrasion to right eye of patient." After some discussion Dean learned the altercation was over a cigarette.

The People argued the Interdisciplinary Notes were admissible under the business records and public records exceptions to the hearsay rule (Evid. Code, §§ 1271, 1280).[1] The People also argued the threats by Nelson to harm or kill staff members were admissible under section 1220, the party admission exception.

Nelson also filed a motion in limine. The motion acknowledged the hearsay in the Interdisciplinary Notes was "clearly relevant" to the experts' opinions on continued risk of harm. Nelson sought a limiting instruction that the hearsay was not admissible to prove the truth of stated matters.

The court determined a limiting instruction was unwarranted because the Interdisciplinary Notes had a dual purpose. In addition to assisting the experts in forming their opinions, the hearsay was independently admissible to show the truth of the stated matters under section 1280. As to the multiple hearsay

---

[1] Further statutory references are also to the Evidence Code unless otherwise specified.

in the note on the bathroom incident, the court also found admissibility under section 1240, the spontaneous statement exception to the hearsay rule, and section 1250, the physical condition component of the state-of-mind exception. The court determined the hearsay was trustworthy and reliable because the recording of the bathroom incident was "close enough in time" to its occurrence.

The prosecution presented two expert witnesses, Richard G. Rappaport, M.D., a forensic psychiatrist, and Randy Stotland, Ph.D., a psychologist. Before Dr. Rappaport's testimony, the court admitted the Interdisciplinary Notes into evidence. Dr. Rappaport testified he reviewed the notes and interviewed Nelson to determine whether she met MDO criteria. He explained she continued to suffer from schizophrenia, a psychotic disorder in which the patient is out of touch with reality and characteristically has hallucinations and delusions.

The prosecution had Dr. Rappaport read the Interdisciplinary Notes to the jury. In addition, he testified Nelson volunteered to him during the interview that she "had assaulted two women in recent months." Dr. Rappaport's report states: "She did acknowledge that she had several episodes of anger, two fights in the past year, one with . . . a patient, who she told to get out of her room when the patient was talking to her roommate." Nelson admitted she hit the patient and knocked her to the floor, and nurses wrote her up for the conduct. She also admitted she "had a fight with another patient . . . , a roommate, and accused her of being noisy and talking loud at night, which is the reason for her hitting her."

Dr. Rappaport testified that while Nelson had improved as to "the symptoms of hallucinations and delusions," and she was asymptomatic during the interview, she was not in remission as evidenced by "repeated episodes of aggressiveness and violence with other people." He added that "her behavior is not controllable on her part."

Dr. Stotland testified he met with Nelson, but she declined an interview. He considered her lack of cooperation a red flag because "when somebody has committed the type of crime she has, . . . they need to demonstrate that they are being cooperative, that they are no longer a danger. And by being cooperative with staff and evaluating physicians that's the way you show that you no longer are a danger."

Dr. Stotland testified he had evaluated Nelson in previous years, and she continued to suffer from paranoid schizophrenia. Based on the Interdisciplinary Notes, he believed her conduct was attributable to schizophrenia. Dr. Stotland testified that the January 4, 2011 incident was most distressing because it "is

so similar to the original manslaughter. She takes this woman and grabs her and throws her down to the floor, very similar to the original offense, same type of behavior." Dr. Stotland believed Nelson's illness was not in remission because "she continue[d] to show this instability and the agitation and getting into fights with people and assaulting people." Thus, in his view Nelson continued to pose a danger of physical harm to others.

Nelson presented no evidence. The parties had stipulated that exhibits may go into the jury room during deliberations, and the court allowed the jury to have exhibits 1 through 7, which are the Interdisciplinary Notes. The jury returned a verdict finding Nelson was an MDO, and the court ordered a one-year extension of her commitment.

DISCUSSION

I

*MDO Law*

■ "An MDO proceeding is civil, rather than criminal, in nature." (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1013 [91 Cal.Rptr.3d 609].) "The Mentally Disordered Offender Act (MDO Act), enacted in 1985, requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment during and after the termination of their parole until their mental disorder can be kept in remission. [Citation.] Although the nature of an offender's past criminal conduct is one of the criteria for treatment as [an MDO], the MDO Act itself is not punitive or penal in nature. [Citation.] Rather, the purpose of the scheme is to provide MDO's with treatment while at the same time protecting the general public from the danger to society posed by an offender with a mental disorder." (*In re Qawi* (2004) 32 Cal.4th 1, 9 [7 Cal.Rptr.3d 780, 81 P.3d 224].)

■ "Commitment as an MDO is not indefinite; instead, '[a]n MDO is committed for . . . one-year period[s] and thereafter has the right to be released unless the People prove beyond a reasonable doubt that he or she should be recommitted for another year.' " (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1063 [116 Cal.Rptr.3d 530, 239 P.3d 1228].) A recommitment "requires proof beyond a reasonable doubt that (1) the patient has a severe mental disorder; (2) the disorder 'is not in remission or cannot be kept in remission without treatment'; and (3) by reason of that disorder, the patient represents a substantial danger of physical harm to others." (*People v. Burroughs* (2005) 131 Cal.App.4th 1401, 1404 [32 Cal.Rptr.3d 729]; see Pen. Code, §§ 2970, 2962.) The phrase " 'cannot be kept in remission without

treatment' " means "that one of four specified acts have occurred during the previous year—a violent act except in self-defense, a serious threat, intentional property damage or failure to follow the treatment plan." (*People v. Burroughs*, at p. 1407.)

## II

*Admissibility of Interdisciplinary Notes*

### A

Nelson acknowledges the expert witnesses properly relied on the Interdisciplinary Notes in forming their opinions. She asserts, however, that because they contain hearsay and multiple hearsay, the trial court erred by allowing the experts to discuss them in detail, providing the jury with them during deliberations, and refusing her request for a limiting instruction. We disagree with Nelson's analysis.

Hearsay is evidence of an out-of-court statement offered to prove the truth of its contents. (*People v. Ortiz* (1995) 38 Cal.App.4th 377, 389 [44 Cal.Rptr.2d 914].) Hearsay is inadmissible unless it comes within an exception to the hearsay rule. (§ 1200.) Multiple hearsay is admissible if each layer falls within an exception to the hearsay rule. (§ 1201.)

"An expert witness may express an opinion based on information without regard to the information's admissibility in evidence." (*People v. Chapman* (1968) 261 Cal.App.2d 149, 178 [67 Cal.Rptr. 601]; see § 801, subd. (b).) Mental health experts routinely rely on interview reports and observations of nontestifying experts. (*People v. Cooper* (2007) 148 Cal.App.4th 731, 746–747 [56 Cal.Rptr.3d 6]; *People v. Dodd* (2005) 133 Cal.App.4th 1564, 1569 [35 Cal.Rptr.3d 692].) "A qualified expert is entitled to render an opinion on the criteria necessary for an MDO commitment, and may base that opinion on information that is itself inadmissible hearsay if the information is reliable and of the type reasonably relied upon by experts on the subject. [Citations.] A trial court, however, may not admit an expert opinion based on information furnished by others that is speculative, conjectural, or otherwise fails to meet a threshold requirement of reliability." (*People v. Dodd, supra,* 133 Cal.App.4th at p. 1569.)

"Hearsay relied upon by experts in formulating their opinions is not testimonial because it is not offered for the truth of the facts stated but merely as the basis for the expert's opinion." (*People v. Cooper, supra,* 148 Cal.App.4th at p. 747.) "The reason is clear; if hearsay is admitted for a nonhearsay purpose, it does not turn upon the credibility of the hearsay

declarant, making cross-examination of that person less important. The hearsay relied upon by an expert in forming his or her opinion is 'examined to assess the weight of the expert's opinion,' not the validity of their contents." (*Ibid.*)

Nelson relies on this general rule: " 'While an expert may state on direct examination the matters on which he relied in forming his opinion, he may not testify as to the *details* of such matters if they are *otherwise inadmissible.*' " (*People v. Coleman* (1985) 38 Cal.3d 69, 92 [211 Cal.Rptr. 102, 695 P.2d 189], italics added, disapproved of on another point in *People v. Riccardi* (2012) 54 Cal.4th 758 [144 Cal.Rptr.3d 84, 281 P.3d 1]; *People v. Price* (1991) 1 Cal.4th 324, 416 [3 Cal.Rptr.2d 106, 821 P.2d 610] ["expert may not under the guise of stating reasons for an opinion bring before the jury incompetent hearsay evidence"].) "The trial court has considerable authority and discretion to prevent the wholesale admission of incompetent hearsay, such as by resort to its discretion provided in . . . section 352 and by its use of instructions to the jury." (*People v. Cooper, supra*, 148 Cal.App.4th at p. 747.)

Here, however, the trial court determined the Interdisciplinary Notes the experts relied on were not " 'otherwise inadmissible.' " (*People v. Coleman, supra*, 38 Cal.3d at p. 92.) Rather, the court ruled the notes were independently admissible for the truth of their contents under statutory exceptions to the hearsay rule. When hearsay is admitted from other sources, expert witnesses are "not precluded from reiterating the same facts during their direct examination." (*People v. Dean* (2009) 174 Cal.App.4th 186, 193 [94 Cal.Rptr.3d 478] (*Dean*).)

■ The court admitted the Interdisciplinary Notes under section 1280, the public records exception to the hearsay rule.[2] " 'The object of this hearsay exception "is to eliminate the calling of each witness involved in preparation of the record and substitute the record of the transaction instead." ' " (*Bhatt v. State Dept. of Health Services* (2005) 133 Cal.App.4th 923, 929 [35 Cal.Rptr.3d 335] (*Bhatt*).)

■ Additionally, on the patient's report to a hospital staff member that Nelson struck her in the eye, the court relied on the spontaneous statement

[2] Section 1280 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The source of information and method and time of preparation were such as to indicate its trustworthiness."

exception under section 1240,[3] and the physical sensation component of the state-of-mind exception under section 1250.[4] " ' "To render [statements] admissible [under section 1240] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." ' " (*People v. Thomas* (2011) 51 Cal.4th 449, 495 [121 Cal.Rptr.3d 521, 247 P.3d 886].)     ■     A declaration of then existing pain is admissible under section 1250 (*In re Tanya P.* (1981) 120 Cal.App.3d 66, 70 [174 Cal.Rptr. 533]), because it has essentially the same indicia of reliability as a spontaneous statement.

■     The People also argued the Interdisciplinary Notes were admissible under section 1271, the business records exception to the hearsay rule.[5] As with section 1280, the object of the business records exception is "to eliminate the necessity of calling each witness, and to substitute the record of the transaction or event." (*Loper v. Morrison* (1944) 23 Cal.2d 600, 608–609 [145 P.2d 1].) Additionally, for Nelson's threats to harm or kill staff members the People cited section 1220, the exception for party admissions.[6] **(10)** "The rationale underlying this exception is that the party cannot object to the lack of the right to cross-examine the declarant since the party himself [or herself] made the statement." (Cal. Law Revision Com. com., 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1220, p. 71.)

---

[3] Section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

[4] Section 1250 provides: "(a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of . . . pain, or bodily health) is not made inadmissible by the hearsay rule when: [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant." Under section 1252, "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness."

[5] Section 1271 provides: "Evidence of a *writing made as a record of an act, condition, or event* is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

[6] Section 1220 provides: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

While the court did not address sections 1271 and 1220, "if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning. [Citations.] All intendments and presumptions are made to support the judgment on matters as to which the record is silent." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [124 Cal.Rptr.3d 78].)

"Hospital . . . records, if properly authenticated, fall within the umbrella of the business record exception." (*Dean, supra,* 174 Cal.App.4th at p. 198, fn. 5; accord, *In re R.R.* (2010) 187 Cal.App.4th 1264, 1280 [114 Cal.Rptr.3d 765]; *In re Troy D.* (1989) 215 Cal.App.3d 889, 902–903 [263 Cal.Rptr. 869]; *Loper v. Morrison, supra,* 23 Cal.2d at p. 608 ["There is no reason to believe that a hospital record is not as truthful as a record kept by a commercial firm. It is a record upon which treatment of the patient is based, and experience has shown it to be reliable and trustworthy."].)[7] Hospital records may also qualify as public records under section 1280 if properly authenticated. (*Bhatt, supra,* 133 Cal.App.4th at pp. 929–930.)

Nelson asserts the Interdisciplinary Notes were inadmissible under section 1271 or 1280 because the People did not call a witness to lay a proper foundation. The People claim the foundation was adequate because Patton produced the notes pursuant to a subpoena duces tecum. " 'Although similar to the business records exception [(§ 1271)], the official records exception differs in one important respect. . . . [S]ection 1271 "requires a witness to testify as to the identity of the record and its mode of preparation in every instance. In contrast, . . . [s]ection 1280 . . . permits the court to admit an official record or report without necessarily requiring a witness to testify as to its identity and mode of preparation *if the court takes judicial notice or if sufficient independent evidence shows that the record or report was prepared in such a manner as to assure its trustworthiness.*" ' " (*Bhatt, supra,* 133 Cal.App.4th at p. 929.)

Nelson, however, failed to preserve appellate review by raising a founda-tional objection at trial. Her in limine motion was directed solely to the expert

---

[7] Citing *People v. Reyes* (1974) 12 Cal.3d 486 [116 Cal.Rptr. 217, 526 P.2d 225] (*Reyes*), Nelson asserts that "according to Supreme Court authority, psychiatric records are inadmissible under the business records exception of . . . section 1271." *Reyes* made no such blanket ruling. Rather, it upheld the exclusion of an opinion a psychiatrist made 20 years earlier that the defendant's victim suffered from "sexual psychopathy." (*Reyes, supra,* at p. 502.) The court concluded the opinion was too remote to be reliable, and it was "not an act, condition or event within the meaning of [section 1271]." (*Id.* at p. 503.) Nelson also claims that in *Dean, supra,* 174 Cal.App.4th 186, the court held "institutional records from state mental hospitals are generally 'inadmissible hearsay.' " In *Dean,* however, the court noted the hospital records were not admitted under section 1271. The question there was whether expert witnesses who relied on hearsay in the records could recite the details of the hearsay at trial. (*Dean,* at pp. 197–198 & fn. 5.)

witnesses' reliance on hearsay to the extent it was otherwise inadmissible. The motion does not address statutory exceptions to the hearsay rule. At the hearing, the court had no inkling of any foundational problem because Nelson agreed "the People do not have to lay an additional foundation to say that these documents are the documents from the record." When the court later admitted into evidence the Interdisciplinary Notes for the truth of stated matters, Nelson's counsel stated that "other than the previous objection made, we have no objection to that."

· " ' "[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court *on the ground sought to be urged on appeal*." ' " (*People v. Williams* (2008) 43 Cal.4th 584, 620 [75 Cal.Rptr.3d 691, 181 P.3d 1035], italics added; see § 353, subd. (a).) " 'Specificity is required both to enable the court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence.' " (*People v. Boyette* (2002) 29 Cal.4th 381, 424 [127 Cal.Rptr.2d 544, 58 P.3d 391].) The failure to raise a specific objection to the admission of evidence results in forfeiture of appellate review. (*People v. Doolin* (2009) 45 Cal.4th 390, 434 [87 Cal.Rptr.3d 209, 198 P.3d 11].) Nelson could not sit idly by and expect relief on appeal. Had she brought foundational problems to the court's attention, the People presumably could have rectified them.

In addition to forfeiting review of the admission of hearsay under sections 1271 and 1280, Nelson raised no objection to the court's reliance on sections 1240 and 1250 insofar as the bathroom incident is concerned. On appeal, she mentions sections 1240 and 1250, and the party admission exception on section 1220, only in passing. She does not claim the statutes were inapplicable.

In any event, any arguable error in admitting the Interdisciplinary Notes was harmless under both the state "reasonable probabilities" standard (*People v. Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243]) and the federal "beyond a reasonable doubt" standard (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]) because there was other competent evidence of Nelson's continued violence. Nelson forthrightly admitted to Dr. Rappaport during her interview that she was recently violent toward other patients in two incidents. Nelson conceded that in one incident she struck a patient and knocked her to the floor, a scenario reminiscent of the voluntary manslaughter charge that resulted in her original commitment. Nelson ignores the admissions she made to Dr. Rappaport.

B

Nelson did object to the admission of the Interdisciplinary Notes under sections 1271 and 1280 on the ground they were "testimonial" in nature, and

thus violated her right of confrontation and cross-examination. Nelson cited *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (*Crawford*), in which the United States Supreme Court held that in a criminal case the Sixth Amendment's confrontation clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (541 U.S. at pp. 53–54.)

An MDO proceeding, however, is a civil proceeding. "There is no right to confrontation under the state and federal confrontation clause in civil proceedings, but such a right does exist under the due process clause." (*People v. Otto* (2001) 26 Cal.4th 200, 214 [109 Cal.Rptr.2d 327, 26 P.3d 1061].) The Sixth Amendment and due process confrontation rights are not coextensive. (*Otto,* at p. 209.) Due process in a civil proceeding "is not measured by the rights accorded a defendant in criminal proceedings, but by the standard applicable to civil proceedings." (*People v. Superior Court (Howard)* (1999) 70 Cal.App.4th 136, 154 [82 Cal.Rptr.2d 481].)

In civil proceedings, " '[d]ue process requires only that the procedure adopted comport with fundamental principles of fairness and decency. The due process clause of the Fourteenth Amendment does not guarantee to the citizen of a state any particular form or method of procedure.' " (*In re Parker* (1998) 60 Cal.App.4th 1453, 1462 [71 Cal.Rptr.2d 167].) In *Otto*, our high court explained that the due process rights of a sexually violent predator (Welf. & Inst. Code, § 6604) depend on several factors, including "the government's interest, . . . the function involved, and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." (*People v. Otto, supra*, 26 Cal.4th at p. 214.)

Although the Sixth Amendment is inapplicable, "Sixth Amendment cases . . . may provide helpful examples in determining the scope of the more limited right of confrontation held by probationers under the due process clause." (*People v. Johnson* (2004) 121 Cal.App.4th 1409, 1412 [18 Cal.Rptr.3d 230].) *Crawford* explained the Sixth Amendment is concerned with a "specific type of out-of-court statement." (*Crawford, supra*, 541 U.S. at p. 51.) *Crawford* notes, however, that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." (*Id.* at p. 68.)

Nelson contends the Interdisciplinary Notes were "testimonial" because the "prosecutor's use of these reports, as well as the experts' reliance on them,

indicates they were prepared, at least in part, for use at trial, leading an objective person to reasonably believe they would be used in that manner." In *People v. Cage* (2007) 40 Cal.4th 965 [56 Cal.Rptr.3d 789, 155 P.3d 205] (*Cage*), however, the California Supreme Court noted that *Crawford, supra*, 541 U.S. 36 mentioned, but did not expressly endorse, an objective test for determining whether hearsay was testimonial. (*Cage, supra*, at p. 984, fn. 14.) *Cage* explains that *Davis v. Washington* (2006) 547 U.S. 813 [165 L.Ed.2d 224, 126 S.Ct. 2266] (*Davis*) "now confirms that the proper focus is not on the mere reasonable chance that an out-of-court statement might later be used in a criminal trial. Instead, we are concerned with statements, made with some formality, which, *viewed objectively*, are for the *primary purpose* of establishing or proving facts for possible use in a criminal trial." (*Cage*, at p. 984, fn. 14; see *Davis, supra*, at pp. 822, 828, 830.) Nelson ignores *Davis* and *Cage*.

We conclude the Interdisciplinary Notes are not testimonial in nature, and thus the due process right of confrontation does not arise. The notes were recorded by hospital staff members for purposes of discipline and the safety of other patients and staff, and the treatment of Nelson required by her conduct. The notes do not suggest staff was concerned with possible future litigation. " 'Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . .' " (*People v. Johnson, supra*, 121 Cal.App.4th at p. 1413.)[8]

Moreover, there is no ground for reversal because any possible error of federal constitutional dimension was harmless beyond a reasonable doubt. (*Chapman v. California, supra*, 386 U.S. at p. 24.) Again, Nelson admitted to Dr. Rappaport that her violence toward others had continued, and one incident was remarkably similar to the underlying crime leading to the original commitment.

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[8] Contrary to Nelson's argument, *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305 [174 L.Ed.2d 314, 129 S.Ct. 2527] is unhelpful. There, the United States Supreme Court held that certificates of analysis showing the results of forensic tests performed on a drug sample were testimonial in nature, and thus there was a right of confrontation. (*Id.* at p. 311.) Unlike the situation here, the sole purpose of the drug testing was litigation based.

*See footnote, *ante*, page 698.

## DISPOSITION

The order is affirmed.

Haller, J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 3, 2013, S205852.