Filed 5/31/13  In re Joshua K. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re JOSHUA K., A Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSHUA K.,<br><br>        Defendant and Appellant. | B244337<br>(Los Angeles County<br>Super. Ct. No. TJ20089) |

APPEAL from an order of the Superior Court of Los Angeles County, Charles R. Scarlett, Judge.  Reversed in part, affirmed as modified, with directions.

Law Offices of Esther R. Sorkin and Esther R. Sorkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

The juvenile court sustained a petition charging appellant Joshua K. with grand theft of an automobile and unlawfully taking a vehicle, and found that appellant committed the crimes to benefit a gang. Appellant contends that the charge of unlawfully taking a vehicle was improperly sustained, and that there was insufficient evidence to support the gang findings. We agree that the charge of unlawfully taking a vehicle must be dismissed, but reject appellant's challenge to the sufficiency of the gang allegation evidence. We therefore affirm in part, reverse in part, and modify appellant's maximum confinement time to reflect our determinations.

**RELEVANT PROCEDURAL BACKGROUND**

On June 5, 2012, a petition was filed under Welfare and Institutions Code section 602, charging appellant in count 1 with grand theft of an automobile (Pen. Code, § 487, subd. (d)(1)), in count 2 with unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)), and in count 3 with evading a police officer (Veh. Code, § 2800.2, subd. (a)). Accompanying counts 1 and 2 were allegations that appellant committed the offenses for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(A)).

On July 20, 2012, the juvenile court sustained the petition and found the gang allegations to be true. Appellant was declared a ward of the court, consigned to the custody and control of a probation officer, and ordered suitably placed. The court set appellant's maximum term of confinement at nine years and four months, comprising three years for count 1, four years for the gang finding accompanying count 1, eight months for each of counts 2 and 3, and one year for the gang finding accompanying count 2.

## FACTS

A.  *Prosecution Evidence*

On June 2, 2012, at approximately 4:30 p.m., Jared Williams parked his Honda Accord near the intersection of San Vincente and Holly Street in Compton. Williams soon learned that the car was no longer there.

Los Angeles County Deputy Sheriff Jason Smith and his partner were driving in a patrol car when they were notified regarding the missing Honda. Shortly after 5:30 p.m., Smith saw the Honda and followed it.  In response, the Honda began to run red lights and increased its speed to 65 miles per hour.  Smith called for assistance and turned on his car's sirens and lights.  The Honda wove recklessly through traffic at a high speed, made a turn, crashed into a street pole, and stopped.

The deputies arrested appellant, the Honda's driver, as he attempted to crawl out of a side window.  Appellant was wearing a blue Seattle Mariners baseball cap. Smith interviewed appellant, who waived his *Miranda* rights.[1]  Appellant told Smith that he had stolen the Honda.

Los Angeles County Deputy Sheriff Nina Gonzales, a gang investigator with the Operation Safe Streets Bureau, testified as a gang expert.  According to Gonzales, the South Side Compton Crips (South Side) gang has approximately 261 members, who engage in murder, attempted murder, gun possession, narcotics violations, theft, and vandalism.  South Side members use the "S" from the Seattle Mariners team as a common symbol, and often wear Seattle Mariners clothing. Their major rivals include the Santana Block Compton Crips (Santana Block). Gonzales opined that appellant was a South Side member on the basis of her

---

[1]     *Miranda v. Arizona* (1966) 384 U.S. 436.

personal interactions with him, including his statement to her that he belonged to the gang.

In response to hypothetical questions, Gonzales also opined that appellant committed his offense for the benefit of the South Side gang with the specific intent to promote its criminal activities. According to Gonzales, there was an active feud between the South Side and Santana Block gangs when appellant committed his offenses, pointing to two murders and two assaults with a deadly weapon shortly before appellant's offenses, and another car theft immediately following those offenses. She opined that appellant's theft of the car was preparation for a retaliatory crime by his gang.

B. *Defense Evidence*

Appellant presented no evidence.

## DISCUSSION

Appellant contends (1) that the charge of unlawfully taking a vehicle was improperly sustained, and (2) that there is insufficient evidence to support the gang findings.

A. *Lesser Included Offense*

Appellant maintains that the charge of unlawfully taking a vehicle (Veh. Code, § 10851, subd. (a)) must be dismissed as a lesser included offense of grand theft of an automobile (Pen. Code, § 487, subd. (d)(1)). Generally, "multiple convictions may not be based on necessarily included offenses." (*People v. Pearson* (1986) 42 Cal.3d 351, 355, italics omitted.) Because the two offenses in question are predicated on the same events, appellant is correct that the former is

4

necessarily included within the latter. (*People v. Barrick* (1982) 33 Cal.3d 115, 127-128, reversed on another ground in *People v. Collins* (1986) 42 Cal.3d 378, 393; *People v. Buss* (1980) 102 Cal.App.3d 781, 784; see also *People v. Kehoe* (1949) 33 Cal.2d 711, 713-716.) Respondent does not dispute this conclusion.

As the trial court's determination of appellant's maximum term of confinement is based on the charge of unlawfully taking a vehicle, that term must be reduced by eight months. (*In re Asean D.* (1993) 14 Cal.App.4th 467, 475-476.) Moreover, because the gang enhancement accompanying the charge is also infirm (*People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1310), the maximum term of confinement must be reduced by an additional year.

B. *Sufficiency of the Evidence*

Appellant contends there was insufficient evidence to support the gang finding accompanying the grand theft charge. Penal Code section 186.22, subdivision (b)(1), provides a sentence enhancement for a defendant convicted "of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." To establish the enhancement, the prosecution relied primarily on expert testimony from Deputy Sheriff Gonzales. Appellant argues that Gonzales's testimony and the other trial evidence was insufficient to show (1) that his offense was committed for the benefit of the South Side gang, and (2) that he acted with the requisite specific intent. For the reasons discussed below, we disagree.

1.      *Standard of Review*

Our inquiry follows established principles.  "In determining whether the evidence is sufficient to support a conviction . . . , 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  [Citations.]  Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'  [Citation.]  Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'  [Citation.]"  (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224, italics omitted.)

2.      *Expert Testimony*

Because appellant's contentions target the adequacy of Deputy Sheriff Gonzales's testimony, we examine the principles governing expert testimony regarding gangs.  Expert testimony may be presented to establish the culture and habits of criminal street gangs.  (*People v. Gardeley* (1996) 14 Cal.4th 605, 617 (*Gardeley*).)  Such testimony is subject to the standards generally applicable to expert opinion.  (*Id*. at pp. 617-619.)  Subdivision (b) of Evidence Code section 801 provides that expert opinion must be "[b]ased on matter . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ."  Under this provision, "[e]xpert testimony may be founded on material that is not admitted into evidence and on evidence that is ordinarily inadmissible, such as hearsay, as long as the material is

6

reliable and of a type reasonably relied upon by experts in the particular field in forming opinions. [Citation.] Thus, a gang expert may rely upon conversations with gang members, his or her personal investigations of gang-related crimes, and information obtained from colleagues and other law enforcement agencies." (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1463.)

As with other types of expert witness, the prosecution may present testimony from a gang expert by asking hypothetical questions. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 946.) Thus, a gang expert may render an opinion on the basis of a hypothetical question that asks the expert to assume the truth of specified facts, provided the hypothetical is "rooted in facts shown by the evidence." (*Gardeley*, *supra*, 14 Cal.4th at p. 618.)

In view of these foundational requirements, gang expert testimony may fail to constitute substantial evidence even if it is admitted. (*In re Alexander L.* (2007) 149 Cal.App.4th 605, 611-614 (*Alexander L.*).) Generally, "expert testimony does not constitute substantial evidence when based on conclusions or assumptions not supported by evidence in the record [citation], or upon matters not reasonably relied upon by other experts [citation]. Further, an expert's opinion testimony does not achieve the dignity of substantial evidence where the expert bases his or her conclusion on speculative, remote or conjectural factors. [Citation.]" (*People ex rel. Brown v. Tri-Union Seafoods, LLC* (2009) 171 Cal.App.4th 1549, 1567.)

### 3. *Underlying Proceedings*

At the beginning of the hearing on the offenses alleged against appellant, defense counsel sought to exclude evidence of five crimes that Deputy Sheriff Gonzales intended to rely upon in testifying about the gang allegation. Each crime occurred within a short period encompassing the car theft charged against

appellant, which took place shortly after 4:30 p.m. on June 2, 2012.  The five crimes were (1) a murder in South Side territory at 11:10 p.m. on June 1, 2012; (2) a murder in Santana Block territory at 12:04 a.m. on June 2, 2012; (3) an assault with a deadly weapon in Santana Block territory at 12:15 a.m. on June 2, 2012; (4) an assault with a deadly weapon in Santana Block territory at 1:00 a.m. on June 2, 2012; and (5) a car theft in South Side territory at 5:45 p.m. on June 2, 2012.  Defense counsel argued that the evidence of the crimes was irrelevant and more prejudicial than probative.  The trial court denied his motion to exclude the evidence.

Later, Deputy Sheriff Gonzales testified that she had been a gang investigator with the Operation Safe Streets Bureau for four and a half years.  She was assigned to investigate crimes by members of specific gangs, including the South Side gang.  For purposes of showing that the South Side gang constituted a "criminal street gang" (§ 186.22, subd. (b)(1)), Gonzales testified regarding the convictions of two gang members for murder and attempted murder.  Gonzales was familiar with the convictions through conversations with the pertinent investigating officers.

After testifying that appellant had admitted his membership in the South Side gang, Gonzales described her role in the investigation of the crimes charged against him.  On June 13, 2012, she executed a search warrant for appellant's residence, where she found two composition books in his room.  Inside the books she found the initials of certain rival gangs, with "187" written nearby.  Gonzales opined that the "187" meant that appellant was prepared to kill members of the rival gangs.[2]

---

[2]     Penal Code section 187 defines the crime of murder.

8

When the prosecutor began to question Gonzales regarding her knowledge of the first of the five crimes discussed above (the June 1 murder), defense counsel asserted an objection based on relevance.  After the prosecutor noted that the objection had been overruled, the following colloquy occurred between the trial court and defense counsel:

"[Court]:  What about [Gonzales's] qualifications?  Is there any objection?  Do you have any objections concerning her qualifications?

"[Defense Counsel]:  As an expert?

"[Court]:  Yes.  Based on training and experience.

"[Defense Counsel]:  No, your honor.

"[The Court]:  All right.  Then the court will find she is an expert based on training and experience."

Following this ruling, the prosecutor examined Gonzales regarding her awareness of the five crimes, based on "[her] background, training and experience[,] and . . . knowledge of ongoing investigations."  Gonzales described each of the crimes; in addition, she stated that Santana Block gang members were suspected of having committed the crimes in South Side territory, and that South Side gang members were suspected of having committed the crimes in Santana Block territory.  She further testified that the car appellant had allegedly stolen was located in territory of the Leuders Park Piru gang, which is hostile to the South Side gang.

In response to hypothetical questions, Gonzales opined that a South Side gang member who stole a car after two murders and two assaults involving another rival gang would have done so for the benefit of his own gang, and with the specific intent of promoting its criminal conduct.  According to Gonzales, the four earlier crimes showed that "there [was] an ongoing feud between Santana Block

9

and South Side." She further stated that under such circumstances, "it is very common for gang members to steal vehicles in order to go out and commit . . . retaliatory crimes."

When cross-examined, Gonzales acknowledged that the first four of the five crimes described above (the murders and assaults) were the subject of open investigations, and that only the fifth crime (the car theft following the crime alleged against appellant) had been "tried to finality." She also stated the perpetrators of the first four crimes had not been "determined with certainty."

During the re-direct examination, the prosecutor asked Gonzales whether she had encountered appellant during the investigations of the two murders preceding the crimes charged against him. Gonzales stated when she arrived at the scene of the first murder, she saw appellant and several of his friends. He was wearing a Seattle Mariners baseball cap and a sweatshirt with the letters "OTS" on the front. According to Gonzales, the letters referred to the "Original Tiny Squad," which is the South Side "clique" to which appellant belonged. Appellant told her that he went to the crime scene because he "had received a phone call that a shooting had occurred."

4. *Analysis*

Appellant contends there was insufficient evidence to establish that his car theft was "committed for the benefit of" the South Side gang, and that he acted with the "specific intent" to promote his gang's activities. (Pen. Code, § 186.22, subd. (b)(1).) As explained below, we reject his contentions.

Regarding the benefit of appellant's car theft to his gang, Gonzales described four violent crimes preceding the car theft that occurred during a 24-hour period within the territories claimed by the South Side gang and its rival, the

Santana Block gang. According to Gonzales, appellant wore gang-related clothing to the scene of the first murder after a phone call alerted him to the crime; moreover, when appellant stole the car, he wore a baseball cap associated with his gang. Based on Gonzales's training, experience, and awareness of the investigations into the crimes, she opined that appellant's car theft was a preparatory act for retaliation in an ongoing gang feud. In our view, this evidence was sufficient to show there was a gang feud (see *People v. Hill* (2011) 191 Cal.App.4th 1104, 1122-1123 [gang expert properly testified regarding the existence of gang war on basis of his knowledge of ongoing investigations]), and that the car theft was for the benefit of appellant's gang (see *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1512-1514 [gang expert's testimony established that defendant possessed gun for benefit of his gang]).

We reach the same conclusion regarding the sufficiency of the evidence concerning appellant's intent. As noted above, appellant wore gang-related clothing when he showed up at the murder scene and when he stole the car; in addition, his composition books displayed notations indicating his willingness to commit crimes on behalf of his gang. This evidence, coupled with Gonzales's opinions regarding the gang feud and the other circumstances surrounding appellant's car theft, was sufficient to show appellant's intent. (*People v. Gamez* (1991) 235 Cal.App.3d 957, 968, fn. 3, disapproved on another ground in *Gardeley*, *supra*, 14 Cal.4th at p. 624, fn. 10 [gang expert's testimony that the defendant's crimes were retaliation for a prior crime by a rival gang established the requisite intent, in view of evidence that the prior crime was gang-related].)

Appellant's principal challenge to the sufficiency of the evidence is that Gonzales's testimony was inadequate to establish the five "additional crimes," namely, the two murders and two assaults preceding appellant's car theft, and the

11

car theft following appellant's crime. He asserts: "In all of these cases, it is completely unknown how Detective Gonzales became 'aware' of the crime at issue, or whether her 'knowledge' or 'awareness' . . . [was] based on first[-]hand observation or fourth[-] hand rumor." He further argues that because no foundation was laid regarding Gonzales's knowledge of the crimes, her testimony based on them must be disregarded, thereby leaving insufficient evidence to support the gang finding. In this regard, he states that "[o]nce these unsubstantiated events are eliminated, . . . there is insufficient factual support for [Gonzales's] opinion[s]." We conclude that appellant has forfeited this contention, as he raised no foundational objection to Gonzales's testimony regarding the additional crimes.

Experts may testify regarding the factual bases of their opinions in two distinguishable ways. As explained above (see pt.B.2., *ante*), in expressing an opinion, an expert is permitted to rely on inadmissible information, provided that the information meets "'a threshold requirement of reliability.'" (*People v. Nelson* (2012) 209 Cal.App.4th 698, 707-711 (*Nelson*), quoting *People v. Dodd* (2005) 133 Cal.App.4th 1564, 1569.) To meet that threshold requirement, experts may describe the factual foundations of their opinions without specifying the details of the inadmissible matters. (*Nelson, supra,* 209 Cal.App.4th at p. 708.) In addition, experts, like lay witnesses, are permitted to testify regarding facts of which they have personal knowledge. (*People v. Southern Cal. Edison Co.* (1976) 56 Cal.App.3d 593, 606.) In offering opinion testimony, experts may rely on these facts. (*People v. Williams* (1992) 3 Cal.App.4th 1326, 1335; Evid. Code, § 801, subd. (b).)

Here, Gonzales relied on the additional crimes in offering her opinions, but the record does not show whether she had personal knowledge of each crime.

With respect to the first murder, Gonzales testified she was present at the scene of the murder and spoke to appellant. Her testimony regarding the remaining four crimes was based on her "knowledge of ongoing investigations."

To the extent appellant argues that Gonzales's personal knowledge of the crimes was not established, he has forfeited the objection. Under subdivision (a) of Evidence Code section 702, a witness's personal knowledge need only be shown "[a]gainst the objection of a party." In view of this provision, in the absence of an objection, the trial court is not required to determine whether witnesses have personal knowledge before admitting their testimony. (*People v. Lewis* (2001) 26 Cal.4th 334, 357.)

Appellant has also forfeited his contention, insofar as he attacks Gonzales's expert opinions on the ground that no "'threshold requirement of reliability'" was made regarding her information concerning the crimes (*Nelson*, *supra,* 209 Cal.App.4th at pp. 707-711). Generally, objections to the foundations of an expert's opinion must be made at trial to preserve them for appeal. (*People v. Bolin* (1998) 18 Cal.4th 297, 321 [defendant's failure to object forfeited his contention that expert's testimony was inadmissible because he failed to visit crime scene]; *People v. Rodriguez* (1969) 274 Cal.App.2d 770, 775-776 [defendant's failure to object forfeited his contention that expert's opinion was based on hearsay].) Here, appellant's counsel asserted no foundational objections to Gonzales's testimony; on the contrary, he affirmed that he had no objections related to her "training and experience." Under these circumstances, appellant may not challenge the reliability of Gonzales's information regarding the crimes. (*Nelson*, *supra*, at pp. 707-711 [appellant forfeited her foundational challenges to report relied upon by expert witnesses by failing to raise them before trial court].)

13

Appellant maintains that his failure to assert foundational objections to Gonzales's testimony does not undermine his contention regarding the sufficiency of the evidence. Pointing primarily to *People v. Bassett* (1968) 69 Cal.2d 122 (*Bassett*) and *In re Daniel C.* (2011) 195 Cal.App.4th 1350 (*Daniel C.*), he argues that the record establishes that Gonzales's testimony did not constitute substantial evidence.[3] He is mistaken.

In *Bassett*, the defendant was charged with murder. (*Bassett, supra*, 69 Cal.2d at p.124.) At trial, his expert witnesses testified that his mental illness prevented him from forming the mental state required for murder. (*Id*. at p. 128.) In rebuttal, the prosecution presented two experts who had never examined the defendant. (*Id*. at p. 140.) Although the experts opined that the defendant possessed the mental capacity to commit murder, they offered no reasoning to support their conclusion. (*Id*. at p. 144.) Our Supreme Court concluded that the experts' testimony did not constitute substantial evidence regarding the defendant's mental capacity, stating: "When the foundation of an expert's testimony is determined to be inadequate as a matter of law, we are not bound by an apparent conflict in the evidence created by his bare conclusions." (*Id*. at p. 148.)

Here, the record does not show that Gonzales's expert testimony lacked adequate foundation; it shows only that the foundation of her testimony was never fully elaborated. Defense counsel had already acknowledged her expertise, "based on [her] training and experience," and her answers to the questions regarding other crimes was expressly based on her "knowledge of ongoing investigations." If

---

[3]    Appellant also directs our attention to *In re Lucero L.* (2000) 22 Cal.4th 1227, 1242-1243, in which our Supreme Court held that Welfare and Institutions Code 355 does not bar the admission of social studies reports containing hearsay in dependency proceedings. As that statute is inapplicable here, *Lucero L.* provides no guidance on the issue before us.

14

appellant's counsel believed this foundation was insufficient, counsel was obliged to raise the objection before the trial court in order to preserve the contention. (*Nelson*, *supra*, 209 Cal.App.4th at pp. 710-711.) As explained in *Nelson*, where the prosecution could have addressed any foundational objections had they been called to the court's attention, the defendant "[may] not sit idly by and expect relief on appeal."[4] (*Id*. at p. 711.)

In *Daniel C.*, a petition was filed, charging a juvenile with the robbery of a supermarket. (*Daniel C.*, *supra,* 195 Cal.App.4th at p. 1353.) Accompanying the charge was a gang allegation. (*Ibid*.) At the hearing on the petition, the evidence showed only that the juvenile wore a red baseball cap when he entered the supermarket. (*Id*. at p. 1354.) He was accompanied by two other young men who also wore items of red clothing. (*Id*. at pp. 1353-1354.) After the other young men left the supermarket, appellant took a bottle of bourbon and attempted to flee. (*Id*. at p. 1353.) When the assistant manager tried to stop him, a fight ensued, resulting in an injury to the assistant manager. (*Ibid*.) A gang expert testified that the juvenile belonged to a gang whose characteristic color was red. (*Id*. at p. 1356.) In addition, he opined that the juvenile stole the bottle of bourbon to

---

[4] For similar reasons, we reject appellants' contention that Gonzales's testimony was foundationally defective, insofar as he relies on *Alexander L.*, *supra*, 149 Cal.App.4th 605, *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, and *In re Leland D.* (1990) 223 Cal.App.3d 251. In each of those cases, the record showed on its face that the gang expert's opinions lacked an adequate foundation. (*Alexander L.*, *supra*, at pp. 611-612 [despite foundational objection by defendant, gang expert offered no explanation of his purported knowledge regarding gang's crimes]; *In re Nathaniel C.*, *supra*, 228 Cal.App.3d at p. 1003 [gang expert acknowledged that he had no personal knowledge of gang's crimes, and offered only "nonspecific hearsay" as the basis of his testimony]; *In re Leland D.*, *supra*, 223 Cal.App.3d at p. 259 [gang expert, when pressed to describe the basis for his opinion, identified only "nonspecific hearsay and arrest information . . . ."].) As explained above, that is not the case here.

benefit his gang. (*Ibid.*) The appellate court concluded that neither the young men's attire nor their conduct sufficiently supported the expert's opinion that the juvenile acted with the specific intent to promote his gang's criminal activity. (*Id.* at p. 1350.)

In contrast with *Daniel C.*, the record before us discloses no similar infirmity in Gonzales's opinions. As explained above, her conclusions relied not only on appellant's own car theft, but also on other facts, including the pattern of apparently gang-related crimes preceding appellant's crime, her knowledge of the investigations into those crimes, and appellant's appearance at the scene of the first of those crimes. We therefore reject appellant's contention that her opinions did not constitute substantial evidence to support the gang finding.[5] In sum, there is sufficient evidence to support the gang finding accompanying appellant's conviction for grand theft of an automobile.

---

[5] For similar reasons, we reject appellants' contention that Gonzales's testimony did not constitute substantial evidence regarding the gang finding, insofar as he relies on *People v. Ochoa* (2009) 179 Cal.App.4th 650 and *People v. Ramon* (2009) 175 Cal.App.4th 843. Those cases stand for the proposition that the commission of a carjacking or car theft by gang members does not, *by itself*, support an expert opinion that the crime benefited the gang or that the members intended to promote their gang's criminal activities. (*People v. Ochoa, supra*, 179 Cal.App.4th at pp. 656-665; *People v. Ramon, supra*, 175 Cal.App.4th at pp. 849-853.) That proposition is inapplicable here, as Gonzales's opinions were based on facts beyond the circumstances of appellant's own car theft.

## DISPOSITION

The judgment is modified to strike the sustained charge of unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) and the accompanying gang enhancement (Pen. Code, § 186.22, subd. (b)(1)(A)), and appellant's maximum term of confinement is reduced to seven years and eight months. The judgment is affirmed in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

SUZUKAWA, J.

17