Filed 9/17/15  P. v. Reynolds CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JERREMY TODD REYNOLDS,<br><br>    Defendant and Appellant. | 2d Crim. No. B259007<br>(Super. Ct. No. 2008046516)<br>(Ventura County) |

Jerremy Todd Reynolds appeals an order recommitting him to the Department of Mental Health for continued involuntary treatment as a mentally disordered offender ("MDO").  (Pen. Code, §§ 2962, 2970.)[1]  We affirm.

### FACTUAL AND PROCEDURAL HISTORY

On August 10, 2009, Reynolds pleaded guilty to stalking and attempted criminal threats.  (§§ 646.9, subd. (a), 664, 422.)  The criminal offenses concerned Reynolds's actions toward a 17-year-old girl, J.M., and Reynolds's assault on his friend who intervened on J.M.'s behalf.  The trial court suspended imposition of sentence and granted Reynolds 36 months of formal probation, with terms and conditions.

On November 19, 2009, the probation officer charged Reynolds with violating probation.  The violations concerned Reynolds's actions toward a 15-year-old girl, J.L., and Reynolds's possession of weapons and marijuana.  On August 11, 2010, the

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

trial court found Reynolds had violated the terms of his probation. On August 18, 2010, Reynolds pleaded guilty to another count of attempted terrorist threats. (§§ 664, 422.) The court then revoked Reynolds's probation, sentenced him to a prison term of two years four months, and imposed various fines and fees.

On September 14, 2012, Reynolds was certified as an MDO pursuant to section 2962, and placed in Atascadero State Hospital for treatment as a condition of parole. On October 1, 2013, the prosecutor filed a petition to extend Reynolds's involuntary commitment pursuant to section 2970.

Reynolds demanded a jury trial regarding the extended commitment. In a pretrial ruling, the court stated that it would permit the victims of Reynolds's criminal offenses to testify "concerning their observations of the defendant's person during the commission of [the crimes]" and their fearfulness. The court also permitted evidence of Reynolds's police interview in 2009 "because it [is] direct evidence of showing [Reynolds's] thinking process when he's not in remission."

*Evidence of Underlying Offenses*

Reynolds was a handyman employed by J.M.'s family. When J.M. was 17 years old, Reynolds painted a heart on the family garage with the words, "Jack Jack." He also contacted J.M. on MySpace and by emails, left flowers and a note for her, and later sent her roses. Reynolds explained his affections for J.M. in religious terms. J.M., her parents, her minister, and the police directed Reynolds to cease contact with J.M.

On November 5, 2008, Reynolds met his friend Ken Forney outside J.M.'s residence. Forney advised Reynolds to leave J.M. alone. In response, Reynolds attacked Forney, knocked him to the ground, "bang[ed]" his head against the concrete, and "squeeze[ed]" his neck. J.M.'s mother kicked Reynolds to the ground. Reynolds responded, "Show me your spirit, woman." Neighbors intervened and struggled with Reynolds until police officers arrived.

On November 8, 2008, Reynolds was confined in Ventura County jail. During a "lockdown" of all prisoners, Reynolds refused to return to his cell, despite repeated orders, warnings, and pepper spray. Reynolds "just stared" at a table. He then

2

physically resisted and fought with sheriff's deputies, who eventually subdued him with a taser. A deputy suffered an eye injury from the altercation.

On November 15, 2009, Ventura County Sheriff's Detective Mario Aguilar interviewed Reynolds regarding his attempts to befriend a 15-year-old girl, J.L. at a local church. Reynolds admitted speaking with J.L. to "encourage[e]" her. He also admitted that he was "looking for a wife," and stated that in Christianity, the age of adulthood is 13. When Aguilar informed Reynolds that he could not approach minors, Reynolds acknowledged that it was the law but "[i]f God puts something on your heart . . . you gotta walk on faith." Following the interview, Aguilar arrested Reynolds for stalking. At trial, the prosecutor played a recording of the interview.

An investigator with the prosecutor's office collected Reynolds's 2008-2011 Facebook postings. They concerned "Love Spells," magic, and Biblical references, and included photographs of Reynolds with flames and a skull.

*Expert Witness Testimony*

Doctor Kevin Perry, a forensic psychologist at Atascadero State Hospital, evaluated Reynolds on separate occasions in 2011, 2012, and 2013. Perry opined that Reynolds satisfies the three criteria necessary for recommitment pursuant to section 2972. In forming his opinion, Perry considered Reynolds's Facebook postings and emails to J.M., his statements to police officers ("[Y]ou have to get them while they're young, before the fruit goes bad"), his probation and sentencing reports, his failure on supervised release in 2011, and his violation of probation.

Perry opined that Reynolds suffers from schizophrenia with polysubstance dependence. Reynolds exhibits grandiose, persecutory, and religious delusions, including a belief that God has betrothed him to teenage girls. Reynolds also suffers from auditory hallucinations and, until a psychotic episode in May 2013, refused antipsychotic medication. Perry also opined that Reynolds's psychotic symptoms would reoccur if he ceased his medication regimen.

Perry opined that Reynolds's mental disorder is not in remission and cannot be kept in remission without treatment. He rested his opinion on Reynolds's psychotic

3

episode in May 2013, and hospital notes reflecting active psychotic symptoms through March 2014. The hospital notes also reflect that Reynolds does not believe that he has a severe mental disorder.

Perry opined that Reynolds represents a substantial danger to others due to his mental disorder. Perry rested his opinion upon Reynolds's convictions for stalking and threats, his assaultive behavior, his lack of insight into his mental disorder, and his history of refusing antipsychotic medication. In forming his opinion, Perry described the details of Reynolds's crimes, including his emails to J.M., and stated that Reynolds's persistent delusional behavior, eventually encompassing violence, demonstrates his dangerousness. Perry also noted that Reynolds described his crimes as "misunderstanding[s]" and did not accept responsibility for his misbehavior.

Doctor John Schipper, a psychologist employed by the Ventura County Conditional Release Program, evaluated Reynolds on three occasions. Schipper opined that Reynolds lacks insight into his mental disorder, as exemplified by his minimization of his stalking crimes. Schipper opined that Reynolds suffers from schizophrenia with symptoms of religious delusions. In discussing his opinion, Schipper referred to the specific circumstances of Reynolds's crimes and his self-medication with marijuana and methamphetamine. Schipper also opined that Reynolds's lack of reaction to the pepper spray at county jail suggested that he was in a psychotic state at the time.

Schipper opined that Reynolds met the three criteria of section 2972. Schipper believed that, based upon accepted methodology of threat assessment, Reynolds presents a moderate to high risk of danger to the public. Schipper also stated that Reynolds has not completed substance abuse treatments and denies past or current psychotic symptoms. During the evaluation, Reynolds also expressed a preference for self-medication with marijuana rather than antipsychotic medications.

*Reynolds's Testimony*

Reynolds testified that he suffers from schizophrenia, disorganized thinking, and bipolar mood swings. He stated that antipsychotic medication calms and relaxes him, and he "enjoy[s]" taking it. Reynolds testified that he has grown away from

4

religiosity and treats his symptoms by taking "ten minutes" if he is angry. He stated that he would follow the law and that the "whole God's law thing has kind of died off." Reynolds testified that, upon release, he intended to live with his girlfriend and his family, seek psychological treatment, and adhere to his medication regimen.

The jury found that Reynolds met the criteria of section 2970 beyond a reasonable doubt. The trial court then recommitted Reynolds to the Department of Mental Health for further treatment pursuant to section 2972.

Reynolds appeals and contends that the trial court erred by permitting evidence, over defense objections, of his commitment offenses. (Evid. Code, § 352.)

*DISCUSSION*

Reynolds argues that evidence regarding his commitment offenses was irrelevant and unduly prejudicial pursuant to section 2972 and Evidence Code section 352. He asserts that because the commitment offenses occurred five to seven years before the current proceeding, the factual circumstances of the offenses bear no relevance to his present dangerousness. (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1065-1066 [MDO recommitment process distinct from initial commitment process; recommitment involves only dynamic criteria set forth in sections 2970 and 2972], overruled on other grounds by *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2.) Reynolds points to his testimony that he follows his medication regimen and has a supportive girlfriend and family to contend that the inflammatory nature of his prior offenses denied him a fair trial.

The trial court did not err by permitting evidence of the commitment offenses because the evidence was relevant to establish that, by reason of his mental disorder, Reynolds represents a substantial danger of physical harm to others. (§ 2970, subd. (b).) The nature and extent of Reynolds's criminal history are relevant to evaluate his potential for future violence when he is not following an antipsychotic medication regimen. "A prior violent offense has a tendency in reason to show that the prisoner poses a 'substantial danger of physical harm to others.'" (*People v. Pace* (1994) 27 Cal.App.4th 795, 799.) Indeed, Schipper opined that Reynolds's behavior in refusing a

5

jail lockdown order suggests that Reynolds was suffering a psychotic episode during a time when he was not medicated. For this reason, evidence of the commitment offenses was relevant and not unduly prejudicial within the meaning of Evidence Code section 352.

Moreover, the expert witnesses properly considered and discussed the factual circumstances of the prior crimes, including Reynolds's emails to J.M., his Facebook posts, and his police interview. "A psychiatrist may and should take into account the prisoner's entire history in making an MDO evaluation. This includes prior violent offenses as well as the prisoner's mental health history." (*People v. Pace*, *supra*, 27 Cal.App.4th 795, 799.) The expert witness may express an opinion based on information without regard to the information's admissibility in evidence. (*People v. Nelson* (2012) 209 Cal.App.4th 698, 707 [expert witness testimony in MDO commitment trial].)

The trier of fact heard and considered Reynolds's testimony regarding adherence to his medication regimen and rejected the testimony. The jury also witnessed Reynolds's demeanor during trial, i.e., the trial court counseled Reynolds's attorney regarding Reynolds's behavior during J.M.'s and her mother's testimony. We do not substitute our views for that of the trier of fact. (*People v. Pace*, *supra*, 27 Cal.App.4th 795, 797.)

The order of recommitment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

6

Nancy Ayers, Judge

Superior Court County of Ventura

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael C. Keller, John Yang, Deputy Attorneys General, for Plaintiff and Respondent.