[No. B179321. Second Dist., Div. Two. Oct. 5, 2005.]

SHAILESHKUMAR BHATT, Plaintiff and Appellant, v.
STATE DEPARTMENT OF HEALTH SERVICES, Defendant and
Respondent.

COUNSEL

Norman L. Schafler for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, John H. Sanders and Susan A. Nelson, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**DOI TODD, J.**—Appellant Shaileshkumar Bhatt appeals from the judgment denying his petition for writ of administrative mandamus following an audit of his dental practice by respondent the Department of Health Services of the State of California (the Department). Two questions are presented here: (1) Whether reports prepared by a fiscal intermediary on behalf of the Department qualify as official records pursuant to Evidence Code section 1280, and (2) whether a dentist working for a dentist enrolled in the Denti-Cal/Medi-Cal program must also be enrolled in the program in order to receive payments from Denti-Cal for services rendered. We conclude that the answer to both questions is yes and we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant is a dentist who is enrolled as a Denti-Cal provider. Delta Dental, which is the "fiscal intermediary" for respondent's Denti-Cal/Medi-Cal program,[1] conducted an audit of appellant's records for the period of February 1, 1997, through February 1, 2000, and issued an audit report on May 3, 2001. The audit report found that there was inadequate or no documentation for certain billed services and that some of the dentists rendering services in appellant's office were not enrolled in the Denti-Cal program as required, entitling respondent to recover payment for the services. In response to the audit, appellant filed a statement of disputed issues. The Office of Medi-Cal Dental Services conducted an "on the record" review and issued a report of findings. Appellant disputed the findings and requested a formal hearing.

---

[1] "Fiscal intermediary, as used in these regulations or in any other document pertaining to the Medi-Cal program and its administration, means any individual, partnership or association, corporation or institution contracting with the Department for the performance of fiscal services related to the program." (Cal. Code Regs., tit. 22, § 50007.) "Medicaid is the federal program which provides medical assistance to those who cannot otherwise afford it. (42 U.S.C. § 1396a(a).) California's Medicaid program is known as Medi-Cal. (Welf. & Inst. Code, § 14000 et seq.) The Medi-Cal program that provides dental services for Medi-Cal beneficiaries is known as Denti-Cal." (*Lin v. State of California* (2000) 78 Cal.App.4th 931, 933, fn. 1 [93 Cal.Rptr.2d 88].)

The matter was heard before respondent's Administrative Law Judge (ALJ) Robert L. Carisoza over three days on April 3 and September 4 and 5, 2002. Oral and documentary evidence was received. On the first day of the administrative hearing, Darrell Carlson, an employee of Delta Dental, which is a private company, testified that he had worked as an on-site representative for just over three years and that his duties included comparing patient records with information contained in each Medi-Cal patient's claim detail report (CDR) during an audit. He testified that a CDR shows the services rendered to the patient and the amount paid for each service by Denti-Cal, which is a division of Delta Dental. The information as to what services were rendered is taken by Denti-Cal from the claim forms submitted by the provider to Denti-Cal. Copies of the CDR's in the record show that they are entitled "California Dental—Medicaid Management Information System, Department of Health Services, Surveillance and Utilization Review, Recipient Claim Detail Report." Mr. Carlson did not personally prepare the CDR's, but retrieved them from a database.

On the last day of the evidentiary hearing, appellant's counsel objected to admission of the CDR's on the ground that they did not qualify as a business record exception to the hearsay rule under Evidence Code section 1271. ALJ Carisoza accepted the documents into evidence as hearsay.

On June 23, 2003, ALJ Carisoza issued a proposed decision granting appellant's appeal. ALJ Carisoza found: "Where timely objection is made to the introduction of the Department's Claim Detail Report (CDR), and the Department did not offer the testimony of any witness who could personally attest to the mode of preparation of the CDR, that document will only be admitted into the record as hearsay evidence. As hearsay evidence, the CDR alone cannot establish a finding of fact. The CDR was relied upon as evidence by the Department to demonstrate, inter alia, the types of services rendered by the Provider, the dates the services were rendered, and the amount paid by the fiscal intermediary for those services. Thereafter, the Department compared this information with the Provider's records and determined that the Denti-Cal program had overpaid the Provider. As no other evidence was introduced to establish the accuracy of the CDR, the Department has failed to establish the reliability of its audit findings."

On August 28, 2003, the proposed decision was rejected by Chief ALJ Robert D. Tousignant, and the parties were invited to submit additional briefing. Both parties submitted written arguments. On October 27, 2003, ALJ Tousignant issued his final decision granting the appeal in part and denying it in part. ALJ Tousignant found that while the CDR did not qualify as a business record under Evidence Code section 1271, it did qualify as an official record under Evidence Code section 1280, and was therefore admissible. He also found that the dentist who actually performed the dental

services billed to Denti-Cal must be enrolled in the program. Of the nine dentists employed by appellant, three were not enrolled in Denti-Cal at the time the services were rendered. ALJ Tousignant therefore upheld respondent's disallowance of services provided by the unenrolled dentists.

On November 25, 2003, appellant filed a petition for writ of administrative mandamus in the superior court, in which he argued that the CDR's were inadmissible and asked the court to "enter judgment for Petitioner consistent with Judge Carisoza's Propose[d] Decision." In a supplemental brief, appellant argued that there was no statutory or other requirement that a dentist must be enrolled in Denti-Cal in order to bill for services rendered. Respondent opposed the petition and lodged the administrative record with the court. At the hearing on the petition, the trial court designated its tentative decision as the statement of decision. The court found that substantial evidence supported the finding that the CDR's were admissible as official records, and that as a matter of law Medi-Cal cannot be billed for services rendered by unenrolled dentists. Judgment was filed on November 1, 2004, and this appeal followed.

## DISCUSSION

*Standard of Review*

■ Where, as here, the trial court was called upon to decide whether an agency's administrative decision was supported by substantial evidence, the function of the appellate court is the same as that of the trial court, that is, to review the administrative decision to determine whether it is supported by substantial evidence. (*Taylor Bus Service, Inc. v. San Diego Bd. of Education* (1987) 195 Cal.App.3d 1331, 1340 [241 Cal.Rptr. 379].) "Substantial evidence has been defined as relevant evidence that a reasonable mind might accept as adequate support for a conclusion. [Citation.] A presumption exists that an administrative action was supported by substantial evidence. [Citation.] The burden is on the appellant to show there is no substantial evidence whatsoever to support the findings of the [agency]." (*Id.* at pp. 1340–1341.) However, to the extent pure questions of law were decided by the trial court upon undisputed facts, a de novo standard will apply at the appellate level. (*Anserv Ins. Services, Inc. v. Kelso* (2000) 83 Cal.App.4th 197, 204 [99 Cal.Rptr.2d 357].)

*Official Records*

Appellant contends that ALJ Tousignant's finding that the CDR's were admissible as official records cannot be upheld because there was no testimony given at the administrative hearing "to authenticate" these documents.

Evidence Code section 1280 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

■ "Although similar to the business records exception (Evid. Code, § 1271), the official records exception differs in one important respect. Evidence Code section 1271 'requires a witness to testify as to the identity of the record and its mode of preparation in every instance. In contrast, [Evidence Code] [s]ection 1280 . . . permits the court to admit an official record or report without necessarily requiring a witness to testify as to its identity and mode of preparation *if the court takes judicial notice or if sufficient independent evidence shows that the record or report was prepared in such a manner as to assure its trustworthiness.*' [Citations.]" (*People v. Dunlap* (1993) 18 Cal.App.4th 1468, 1477 [23 Cal.Rptr.2d 204]; see *People v. George* (1994) 30 Cal.App.4th 262, 274 [35 Cal.Rptr.2d 750] [same].) "The object of this hearsay exception 'is to eliminate the calling of each witness involved in preparation of the record and substitute the record of the transaction instead. [Citations.]' " (*Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 639 [39 Cal.Rptr.2d 384].) "Accordingly, for the exception to apply, '[i]t is not necessary that the person making the entry have personal knowledge of the transaction. [Citations.]' " (*Id.* at pp. 639–640.)

Under these principles, appellant's contention that it was necessary for a custodian or other qualified witness to testify as to the documents' identity and mode of preparation is without merit. On this basis alone we would conclude that appellant's appeal has no merit. In any event, we find that substantial evidence supports the administrative decision.

■ As to the first foundational requirement for an official record under Evidence Code section 1280, ALJ Carisoza found in his proposed decision that the CDR did not qualify as an official record because it was not created by a public employee. In his final decision, ALJ Tousignant found that "this conclusion was based on too narrow a view of the term 'public employee.' " Evidence Code section 195 provides that public employees include an "agent" of a public entity. Appellant does not dispute that Delta Dental, as the fiscal intermediary for respondent, was acting as an agent of respondent. ■ As ALJ Tousignant noted: "A Medi-Cal fiscal intermediary is required by statutes and regulations to receive claims for services to Medi-Cal beneficiaries (Cal. Code Regs., tit. 22, § 51008), verify the eligibility of the

beneficiary to receive the services (Welf. & Inst. Code, § 14042; Cal. Code Regs., tit. 22, § 50769[(b)],) promptly pay or reject claims (Welf. & Inst. Code, § 14104.3(a)(3), see also 42 C.F.R. § 447.45(d)) and handle provider grievances and complaints concerning payments (Cal. Code Regs., tit. 22, § 51015)." Appellant does not dispute that these duties are imposed on Delta Dental. Under Evidence Code section 664, "[i]t is presumed" that these official duties were "regularly performed," and appellant offered no evidence to the contrary. Thus, the CDR's satisfied the first requirement of the official records exception. (*People v. Martinez* (2000) 22 Cal.4th 106, 126 [91 Cal.Rptr.2d 687, 990 P.2d 563]; *People v. Dunlap, supra,* 18 Cal.App.4th at p. 1477.)

As to the second foundational requirement that the writing was made at or near the time of the act, condition or event, ALJ Tousignant noted that the CDR's do not indicate the date the claim was submitted to Delta Dental or the date the information from the claim was recorded into the database. But the CDR's indicate the date the dental service was rendered by the provider and the date the checks were issued for payment of the provider's claims, which were three to eight weeks after the date of service. As ALJ Tousignant found, this time period is consistent with the time requirements concerning fiscal intermediary payment of provider claims. (Welf. & Inst. Code, § 14104.3, subd. (a)(3).)[2] ALJ Tousignant therefore concluded that "[s]ince the checks issued to the Provider were generated by computer, it is reasonable to assume that the data was input into the computer between [the] time Delta Dental received a claim and the time a check was issued. This assumption is also consistent with the statutory duties of a fiscal intermediary to maintain claim data in an electronic format. (Welf. & Inst. Code, § 14040(d) & (e).)" Appellant complains that ALJ Tousignant simply made this "assumption," but appellant offered no evidence to show that the data was not timely entered. In *People v. Martinez, supra,* 22 Cal.4th 106, where the defendant challenged the admissibility of a computer printout from the Department of Justice's computer system, known as the California Law Enforcement Telecommunications System (CLETS), which reported criminal history information, our Supreme Court noted: " 'Whether an entry made subsequent to the transaction has been made within a sufficient time to render it within the [hearsay] exception depends upon whether the time span between the transaction and the entry was so great as to suggest a danger of inaccuracy by lapse of memory.' . . . the Department's entry into CLETS of criminal information it

---

[2] Welfare and Institutions Code section 14104.3, subdivision (a)(3), provides in part: "Bills for service under this chapter shall be reviewed and rejected or processed for payment within an average of 18 days from receipt of evidence establishing validity of the bill for payment in the office of the contractor. Ninety percent of all bills submitted to the contractor and under the contractor's control, as set forth in the request for proposal, shall be processed and paid in 30 days and 99 percent of all claims submitted to the contractor and under the contractor's control, as set forth in the request for proposal, shall be processed and paid in 90 days. . . ."

receives does not depend on memory, but simply involves a transfer of information from one form of storage—the disposition reports—to another—the CLETS database. Under these circumstances, the Department's statutory recording duties are sufficiently specific to support the trial court's discretionary determination that the CLETS printout met the timeliness requirement of the official records exception." (*Id.* at p. 128, citation omitted.) The same is true here.

■ As to final requirement of trustworthiness, ALJ Tousignant found "the accuracy of the data is required by statute and by contract. The data is also subject to verification by providers who receive payments based on the claims they submit. Any provider complaints or grievances concerning the processing or payment of claims can be appealed to the fiscal intermediary and must be resolved in a timely manner. (Cal. Code Regs., tit. 22, § 51015.)" Appellant does not dispute these findings. " '[T]he trustworthiness of the method of preparation of the record is . . . supported by the presumption, contained in Evidence Code section 664, that "official duty has been regularly performed." ' [Citations.] 'This presumption shifts the burden of proving the foundational issue of trustworthiness of the method of preparing the official writing to the party objecting to the admission of the official writing. [Citation.]' " (*People v. Martinez, supra,* 22 Cal.4th at p. 130.) Once again, appellant presented no evidence to establish the CDR's untrustworthiness.

Under these circumstances, we conclude there was no error in admitting the CDR's under the official records exception to the hearsay rule.

*Unenrolled Providers*

Appellant contends that there is no statutory or other requirement that a dentist, other than the billing provider, must be enrolled in the Medi-Cal/Denti-Cal program in order to receive payments from Denti-Cal for services rendered. Because it is undisputed that three of the dentists in appellant's office were not enrolled in the Denti-Cal program at the time the services in question were rendered, we decide this issue de novo. (*Anserv Ins. Services, Inc. v. Kelso, supra,* 83 Cal.App.4th at p. 204.)

Title 22 of the California Code of Regulations is applicable here. Section 51458.1, promulgated in 1980, provides that "(a) The Department shall recover overpayments to providers including, but not limited to, payments determined to be: [¶] . . . [¶] (6) For services prescribed, ordered or rendered by persons who did not meet the standards for participation in the Medi-Cal program at the time the services were prescribed, ordered or rendered." (Cal. Code Regs., tit. 22, § 51458.1.) Section 51200, which is part of article 3, entitled "Standards for Participation," provides that "[i]n addition to any other

statutory or regulatory conditions for participation in the Medi-Cal program and any federal requirements for participation in Medicaid, as a condition for enrollment, . . . [a provider] shall meet the standards specified in . . . Sections 51000.30 through 51000.55." (Cal. Code Regs., tit. 22, § 51200, subd. (a).) As of February 2, 2001, section 51000.30 provided that "(a) As a condition for enrollment . . . as a provider . . . in the Medi-Cal program, an applicant or provider shall meet the participation standards specified in Article 3, (commencing with Section 51200) and [¶] . . . [¶] (2) Submit to the Department a completed application package on forms specified in subsection (b), below . . . [¶] . . . [¶] (b) The applicant or provider, when required pursuant to subsection (a), shall complete, as applicable . . . [¶] . . . [¶] (4) One of the applications specified in (2), (3)(B), or 3(E) ["Medi-Cal Physician Application/ Agreement"] for each individual rendering provider of a provider group applicant or provider group." (Cal. Code Regs., tit. 22, former § 51000.30.)

Furthermore, in 1999, the Welfare and Institutions Code, upon which title 22 relies, defined " '[p]rovider' " as any "individual . . . that provides services, goods, supplies, or merchandise, directly or indirectly, to a Medi-Cal beneficiary and that has been enrolled in the Medi-Cal program." (Welf. & Inst. Code, § 14043.1 former subd. (e), see now subd. (n).) Also enacted in 1999, Welfare and Institutions Code section 14043 provides that "[i]n order to ensure the proper and efficient administration of the Medi-Cal program, every applicant . . . and every provider . . . shall be subject to the requirements of this article [1.3]," entitled "Provider Enrollment." (Welf. & Inst. Code, § 14043.)

■ Taken together, these statutes and regulations require that every provider of Medi-Cal services be enrolled in the Medi-Cal program in order to receive payment for such services. ■ "When statutes touch upon a common subject, they must be harmonized, both internally and with each other to the extent possible." (*County of Fresno v. Malaga County Water Dist.* (2002) 100 Cal.App.4th 937, 941 [123 Cal.Rptr.2d 239].) Accordingly, ALJ Tousignant correctly found that only enrolled dentists can bill Medi-Cal for their services. As the trial court noted, if only the billing provider was required to be enrolled, "one dentist could enroll as a provider and enlist any other dentists of his or her own choosing to provide dental services to Medi-Cal beneficiaries and bill the taxpayers for all the services provided by the unenrolled dentists, even if those dentists did not meet the standards for participation in the Medi-Cal program."

*Bias*

■ Appellant also contends that ALJ Tousignant was "anything but impartial and in every way seriously questionable." But appellant never

raised the issue of bias at the trial court. Accordingly, we give this argument no consideration. "It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal. A party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal. [Citations.]" (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117 [95 Cal.Rptr.2d 113].)

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

On November 4, 2005, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 14, 2005, S138727.