Filed 12/12/23  Strachan v. Facebook CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NEIL G. STRACHAN, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> FACEBOOK, INC., et al., <br><br>     Defendants and Respondents. | A165910 <br><br> (San Mateo County Super. Ct. No. 20CIV03457) |

Neil G. Strachan sued Facebook, Inc. (Facebook or the company) for breach of contract and breach of the implied covenant of good faith and fair dealing (breach of the implied covenant) after Facebook cancelled his advertising account and removed his advertising content from the platform. The trial court sustained the company's demurrer to Strachan's second amended complaint (complaint) without leave to amend and dismissed the matter with prejudice.[1]

---

[1] Facebook is now known as Meta Platforms, Inc.  We recite only those facts necessary to resolve the dispositive issues, omitting references to causes of action that are not at issue.  We disregard factual representations in Strachan's briefs that are not supported by record citations.  Our factual summary is drawn from the complaint.  (See *Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 916, fn. 2.)

1

Representing himself, Strachan appeals. He argues the complaint states claims for breach of contract and breach of the implied covenant. We disagree and affirm.

## BACKGROUND

In September 2014, Strachan created a personal Facebook page. He also opened an advertising account with the company and created several "business" pages—including those entitled "Rank Your Women" and "Man With Woman"—where he advertised products and services. Strachan agreed to the company's Terms of Use, Advertising Policies, and Platform Terms (collectively, agreement).

Section 4(2) of the relevant version of Facebook's Terms of Use provided that the company may "suspend or permanently disable access" to a user's account if it determined the user "clearly, seriously or repeatedly breached" the company's terms, policies, or community standards, or where the company was "required to do so for legal reasons." Another provision of the Terms of Use authorized the company to "remove or restrict access" to a user's "content, services or information" if the company determined that doing so was "reasonably necessary to avoid or mitigate adverse legal . . . impacts" to the company.

Section 12(2) of the relevant version of Facebook's Advertising Policies held advertisers "responsible for understanding and complying with all applicable laws and regulations." It warned advertisers that "[f]ailure to comply may result in a variety of consequences, including the cancellation of ads[.]" Section 4(7) forbade ads promoting "the sale or use of adult products or services." Section 7(e) of the relevant version of the Platform Terms authorized the company to "take enforcement action against" the user if the company believed—in its "sole discretion"—that the user violated the Terms

2

of Use.  This provision also allowed the company to "take enforcement action at any time, . . . with or without notice" to the user.

In April 2020, Facebook cancelled Strachan's advertising account and removed his advertising content from the platform.  According to Strachan, this occurred after the company determined he was selling "Adult Services and/or Products," i.e., "sex products."  Strachan sued Facebook.  His complaint alleged claims for breach of contract and breach of the implied covenant.  According to the complaint, Strachan opened an advertising account with Facebook "in accordance with" the agreement, and he "performed all conditions, covenants, and promises required" by the agreement.  The company, however, breached both the agreement and the implied covenant by cancelling his advertising "account when [he] had done nothing to merit such cancellation."  The complaint further alleged Strachan shared a "special relationship" with Facebook because he entrusted the company with personal information.  The complaint attached the agreement.

Facebook demurred.  The company argued the complaint failed to allege facts sufficient to state claims for breach of contract and breach of the implied covenant because—contrary to the complaint's allegations—nothing in the agreement required it to maintain Strachan's advertising content on the platform.  Over Strachan's opposition, the trial court sustained the demurrer without leave to amend.  It concluded the cause of action for breach of contract failed as a matter of law for three reasons: (1) the Terms of Use neither restricted Facebook's ability to remove content from the platform nor required the company to maintain a user's account; (2) the Advertising Policies restricted the user's behavior, not the company's; and (3) the Platform Terms limited the user's conduct without restricting the company's activity.  The court also determined the claim for breach of the implied

covenant—which was premised on the same allegations as the breach of contract cause of action—also failed.  The court later dismissed the matter with prejudice.

## DISCUSSION

Before addressing Strachan's appellate contentions, we recite the pertinent principles of appellate procedure and the standard of review.  A trial court's order is presumed correct; the party challenging the order has the burden to demonstrate reversible error.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  We affirm if the judgment is "correct on any legal basis."  (*65283 Two Bunch Palms Building LLC v. Coastal Harvest II, LLC* (2023) 91 Cal.App.5th 162, 169.)  We disregard arguments unsupported by legal authority, and we hold self-represented litigants to the same standards as attorneys.  (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.)

"When reviewing a ruling on a demurrer, we examine de novo whether the complaint alleges facts sufficient to state a cause of action.  [Citation.] 'We assume the truth of the properly pleaded factual allegations, [and] facts that reasonably can be inferred from those expressly pleaded.'  [Citation.] But we do not assume the truth of 'contentions, deductions, or conclusions of law.'  [Citation.]  We liberally construe the complaint 'with a view to substantial justice between the parties,' drawing 'all reasonable inferences in favor of the asserted claims.'  [Citations.]  The plaintiff . . . 'must show the complaint alleges facts sufficient to establish every element of each cause of action.' "  (*Liapes v. Facebook, Inc.*, *supra*, 95 Cal.App.5th at p. 919.)

Next, we turn to Strachan's contention that the complaint states a claim for breach of contract.  The complaint alleged Facebook breached the agreement by terminating Strachan's advertising account without cause.  But the complaint pointed to no "cause" provision of the agreement either

requiring Facebook to maintain a user's account or restricting the company's ability to remove content from the platform. As summarized *ante*, the Terms of Use authorized the company to unilaterally "suspend or permanently disable access" to a user's account if it determined the user "clearly, seriously, or repeatedly breached" the company's terms, policies, or community standards. And the Advertising Policies prohibited advertisers from promoting "the sale or use of adult products or services" and enabled the company to "take enforcement action against" the user if the company believed—in its "*sole discretion*"—that the user violated the Terms of Use. (Italics added.) Courts have held these terms impose no " ' "affirmative obligations" ' " on the company. (See, e.g., *Cross v. Facebook, Inc.* (2017) 14 Cal.App.5th 190, 201; *Ebeid v. Facebook, Inc.* (N.D. Cal., May 9, 2019, No. 18-CV-07030-PJH) 2019 WL 2059662, at * 7 [advertising terms reserved "Facebook's right to 'reject or remove any ad for any reason' "].)

Our decision in *Murphy v. Twitter, Inc.* (2021) 60 Cal.App.5th 12 is instructive. There, the plaintiff sued an Internet communications platform for breach of contract after it locked her out of her account removed her tweets from the platform despite her claim that "she never violated any of the Terms of Service, Rules or incorporated policies." (*Id.* at pp. 20, 22.) We affirmed the order sustaining the defendant's demurrer without leave to amend. In doing so, we observed that the "clear terms" of the defendant's "user agreement preclude[d] a claim for breach of contract." (*Id.* at p. 35.) The user agreement, we observed, gave the defendant "editorial discretion to remove content" from its platform (*id.* at p. 30) and authorized the defendant to " 'suspend or terminate' [users'] accounts . . . for any or no reason' without liability." (*Id.* at p. 35, brackets in original.)

The same is true here.  Like the contractual provisions at issue in *Murphy*, the agreement gave Facebook discretion to disable a user's account and to remove content—including advertising content—that violated the company's Terms of Use.  As in *Murphy*, the clear terms of the agreement preclude a claim for breach of contract based on the complaint's allegations. (*Murphy v. Twitter, Inc.*, *supra*, 60 Cal.App.5th at p. 35; see also *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 174 [plaintiff must allege "with certainty the facts constituting a breach of contract"].) Because Strachan's breach of contract claim fails, so too does his derivative claim for breach of the implied covenant.  (See *Bionghi v. Metropolitan Water Dist.* (1999) 70 Cal.App.4th 1358, 1370.)

Strachan's arguments to the contrary are not persuasive.  For example, he contends the agreement is ambiguous and that the trial court "ignored" various provisions of the Civil Code governing contractual interpretation.  We decline to consider these arguments because they are made for the first time on appeal.  (See *Bhatt v. State Dept. of Health Services* (2005) 133 Cal.App.4th 923, 933.)  Neither Strachan's assertion that he has a special relationship with Facebook, nor his reliance on the minority opinion in *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 104—which concerns tort liability for bad faith denial of the existence of a contract— establishes he has a viable claim for breach of the implied covenant.

We conclude the complaint fails to state causes of action for breach of contract and breach of the implied covenant.  Having reached this conclusion, we need not determine whether the Communications Decency Act of 1996 (47 U.S.C. § 230) bars the claims.  Finally, we do not consider whether Strachan could amend the complaint to allege cognizable claims for breach of contract and breach of the implied covenant because he has not requested

6

leave or otherwise shown an ability to do so.  (*Lagrisola v. North American Financial Corporation* (2023) 96 Cal.App.5th 1178, 1186, fn.3; *Estate of Jones* (2022) 82 Cal.App.5th 948, 955, fn. 1.)

## DISPOSITION

The judgment is affirmed.  In the interests of justice, the parties are ordered to bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

                                                                GETTY, J.*

We concur.

HUMES, P.J.




MARGUILES, J.









(A165910N)

_____

     * Judge of the Superior Court of California, County of Solano, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8