Filed 4/3/24  Pfeiffer v. Smart CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| CHARITIE PFEIFFER, | C097484 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0048884) |
| v. | |
| HEATHER L. SMART, | |
| Defendant and Respondent. | |

This appeal arises out of civil harassment proceedings.  After a traffic collision, plaintiff Charitie Pfeiffer filed a petition for a civil harassment restraining order against defendant Heather Smart under Code of Civil Procedure section 527.6.[1]  The trial court denied Pfeiffer's petition without prejudice and later granted Smart's motion for attorney fees and costs.  On appeal from that order, Pfeiffer argues that Smart was not entitled to

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

1

an award of attorney fees because she was not the prevailing party within the meaning of section 527.6, as the purported dismissal of Pfeiffer's petition without prejudice did not constitute a final judgment. Pfeiffer alternatively argues that the trial court abused its discretion by awarding Smart attorney fees in the unreasonable amount of $18,939. We affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

We briefly summarize the pertinent facts and procedure.

*The Traffic Collision and Civil Lawsuit*

In the summer of 2022, Pfeiffer and Smart lived in Roseville. Their sons played football on the same team (for ages 10 and under). Smart was the "team mom."

In late May 2022, there was a traffic collision involving Pfeiffer and Smart; Pfeiffer was driving a sport utility vehicle (SUV) and Smart was riding a non-motorized scooter or stand-up bicycle.[2] Neither party called the police and no officer responded to the scene.

In early August 2022, Smart and her husband filed a personal injury action against Pfeiffer, which included a claim for loss of consortium.

*Petitions for a Civil Harassment Restraining Order*

Three days later, Pfeiffer filed a petition for a civil harassment restraining order against Smart under section 527.6. In support of her petition, Pfeiffer alleged that, after the traffic collision, Smart's husband repeatedly threatened her via text messages and phone calls in an attempt to "extort[]" money, including a voice message demanding $2,000 for a replacement bicycle. Pfeiffer also alleged that, in an attempt to harass and intimidate her, Smart "publicly" posted a photograph of her SUV on social media that

---

[2] The parties disagree as to whether Smart was riding a non-motorized scooter or stand-up bicycle at the time of the traffic collision. This factual dispute is immaterial to the resolution of the legal issues raised on appeal.

was accompanied by a "long slander/defamation statement." According to Pfeiffer, she and her (crying) young children can be seen in the photograph. The petition additionally alleged that Smart and her husband continued to harass Pfeiffer after the police "asked" them to "stop," that Smart and her husband "had" other people post messages on the Roseville Police Department's website, and that Smart was not sending Pfeiffer "football emails." The trial court denied Pfeiffer's petition pending a hearing on the matter. In doing so, the court determined the temporary restraining order requested by Pfeiffer was not warranted.

Less than two weeks later and on the day after Pfeiffer was personally served with the personal injury complaint, Pfeiffer filed an amended petition for a civil harassment restraining order against Smart under section 527.6. The amended petition included the following additional allegations of harassment: Smart, as the "team mom," refused to notify Pfeiffer of relevant matters concerning her son and posted two pictures of him on social media, Smart and her husband followed Pfeiffer home after a football practice and took photographs, and Smart used her position as "team mom" to locate Pfeiffer's home and was in Pfeiffer's front yard at one point. The trial court issued a temporary restraining order ex parte, which directed Smart to, among other things, stay away from and not harass or contact Pfeiffer and her son until the completion of the hearing on Pfeiffer's amended petition.

In early September 2022, Smart filed a written response to Pfeiffer's amended petition. Smart denied Pfeiffer's allegations of harassment, objected to the orders requested (e.g., stay away orders), and asked for an award of attorney fees and costs.[3] As part of her response, Smart provided a written statement detailing the reasons why she disagreed with the relief requested by Pfeiffer. By way of background, Smart explained

---

[3] At that time, Smart claimed that she had "accumulated $10,453.50 in fees" and would likely incur "additional fees."

that she suffered "significant personal injuries" and her bicycle was "totaled" after Pfeiffer negligently ran a stop sign and collided with her in a crosswalk. Smart further explained that she filed a civil lawsuit against Pfeiffer, and that, in Smart's view, Pfeiffer was seeking a restraining to prevent her from attending her son's sporting events as a "bargaining chip" to assist Pfeiffer in the lawsuit. Smart claimed that Pfeiffer's allegations of harassment were not supported by any evidence and could be proven false, including Pfeiffer's allegations of harassing phone calls and text messages. According to Smart, Pfeiffer lied about each and every allegation in her petition, which showed that she sought a restraining order in bad faith and with malicious intent. Smart noted that she had been "forced" to file her own petition for a civil harassment restraining order against Pfeiffer due to false allegations Pfeiffer had made to other parents, and because Pfeiffer's friends were harassing her, "talking about guns" to scare her, and trying to get her fired from her job.[4] In support of her position, Smart submitted a variety of evidence, including phone records.

Around a week later, Pfeiffer filed a petition for a civil harassment restraining order against Smart's husband under section 527.6.[5] Pfeiffer alleged that Smart's

---

[4] The appellate record does not include Smart's petition for a civil harassment restraining order against Pfeiffer.

[5] This petition is not included in the appellate record. Around the same time as it was filed, Pfeiffer met with a police officer for the purpose of obtaining an emergency protective order. During this meeting, Pfeiffer explained the circumstances giving rise to her civil harassment petitions, and showed the officer a photograph of the scooter/bicycle Smart was riding at the time of the traffic collision. According to the officer, the "scooter/bicycle did not match the photograph of the new one [that] [Smart's husband] was trying to get Pfeiffer to pay approximately $2000.00 for. However, it matched very closely, down to the same branding as the one [that] Pfeiffer showed [him] on Amazon for just $75.00." In the officer's view, it appeared that Smart's husband "was attempting to defraud Pfeiffer of approximately $1925.00 more than the value of the actual property involved in th[e] collision based on the evidence provided by Pfeiffer."

4

husband engaged in "harassing behavior" after the temporary restraining order was granted against Smart, including making "vulgar sounds . . . towards [Pfeiffer] and [her] children at their school sports activities." Although not entirely clear, the record suggests that the petition also included an allegation that Smart confronted Pfeiffer's husband at a "sporting event" and "publicly" accused him of domestic violence, which further harassed . . . Pfeiffer and cause[d] her to fear for her safety and the safety of her family." The trial court issued a temporary restraining order ex parte, which directed Smart's husband to, among other things, stay away from Pfeiffer until the completion of the hearing on Pfeiffer's petition.

In late September 2022, Smart filed a supplemental opposition to Pfeiffer's amended petition. Smart reiterated her argument that there was no evidence to support a restraining order (including any evidence of harassing phone calls or text messages), and added that the evidence she submitted showed that each and every allegation made by Pfeiffer was false. Smart explained that while she did ask for payment from Pfeiffer as part of settlement negotiations related to the civil lawsuit, she only asked for $1,000, not $2,000, and that the civil lawsuit was filed in response to Pfeiffer's refusal to pay the amount requested. Smart, again, claimed that Pfeiffer sought a restraining order as a "retaliatory effort," explaining that Pfeiffer's petition was filed shortly after she was served with the personal injury complaint. Smart also claimed that she had "accumulated significant attorney's fees for which Pfeiffer should be liable to pay" in the amount of $36,461.50. In support of her request for attorney fees, Smart submitted a declaration from her counsel, which included itemized billing records setting forth the hours expended and hourly rates of the persons that worked on this matter, and a description of the work they performed. The declaration also identified the expenses incurred by Smart's counsel in litigating this matter in the amount of $191.55.

5

*Trial Court's Ruling on the Petitions for a Civil Harassment Restraining Order*

In October 2022, after a hearing where Pfeiffer testified, the trial court issued an order dissolving the temporary restraining orders and dismissed without prejudice all of the petitions for a civil harassment restraining order. The appellate record does not include a reporter's transcript of this hearing.

*Motion for Attorney Fees and Costs*

Three days later, Smart filed a motion for attorney fees and costs pursuant to section 527.6, subdivision (s), arguing that such relief was warranted because she was the prevailing party on Pfeiffer's petition for a civil harassment restraining order. Smart requested attorney fees in the amount of $36,461.50 and expenses in the amount of $191.55.

Pfeiffer did not file a written opposition. Instead, Pfeiffer filed a declaration, asserting that the fee motion should be denied because she did not seek a restraining order against Smart in retaliation for the civil lawsuit or to "gain an upper hand" in that lawsuit, and because the fee motion was not properly served. In her declaration, Pfeiffer requested that the court deny Smart's "exorbitant and unreasonable" request for attorney fees and costs because she was not "responsible for any harassment . . . on social media or in person."

In November 2022, after a hearing, the trial court granted Smart's motion, awarding her attorney fees in the reduced amount of $18,939 and costs in the amount of $191.55. In doing so, the court denied Smart's request for a multiplier.

*Appeal*

Pfeiffer timely appealed from the order awarding fees and costs.

**DISCUSSION**

Pfeiffer argues that Smart was not entitled to an award of attorney fees because she was not the prevailing party within the meaning of section 527.6, as the dismissal of Pfeiffer's petition for a civil harassment restraining order "without prejudice" did not

6

constitute a final judgment.  Pfeiffer alternatively argues that the trial court abused its discretion by awarding Smart attorney fees in the unreasonable amount of $18,939.  As we next explain, the claims are forfeited.  Further, they are meritless.

I

*Forfeiture*

As a threshold matter, we conclude that Pfeiffer has forfeited her claims of error.

A.  *Applicable Appellate Rules of Procedure*

It is a fundamental principle of appellate procedure that a trial court's order is presumed to be correct and the burden is on the appellant to demonstrate reversible error.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  All intendments and presumptions are indulged to support the trial court's order on matters as to which the record is silent, and the appellant must affirmatively establish error.  (*Denham*, at p. 564.)

"Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.)  " '[O]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why.' "  (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.)  An appellant has the burden to establish error "by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited."  (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655; see *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 ["an appellant is required to not only cite to valid legal authority, but also explain how it applies in his case"].)  It is not an appellate court's responsibility to develop an appellant's arguments. (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11.) Appellate courts may, and ordinarily do, "disregard conclusory arguments that are not

7

supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287; see also *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

It is well established that a reviewing court will ordinarily disregard arguments made for the first time on appeal. (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830.) A party who fails to raise an argument in the trial court has therefore forfeited its right to do so on appeal. (*Bhatt v. State Dept. of Health Services* (2015) 133 Cal.App.4th 923, 933; *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.) "The purpose of forfeiture rules generally is to avoid the unfairness that would occur on review if a party were permitted to 'argue the [lower] court erred in failing to conduct an analysis it was not asked to conduct.' " (*People v. Superior Court* (*Nasmeh*) (2007) 151 Cal.App.4th 85, 94.)

B. *Analysis*

For the first time on appeal, Pfeiffer contends that Smart was not the "prevailing party" within the meaning of section 527.6. Pfeiffer did not file a written opposition to the fee motion or make this argument in her declaration opposing the motion, and there is nothing in the record indicating that Pfeiffer raised the argument at the hearing on the fee motion. Pfeiffer did not file a reply brief after Smart pointed out this deficiency and we see no reason to excuse it. Accordingly, we deem the argument forfeited. (*Kern County Dept. of Child Support Services, supra,* 209 Cal.App.4th at p. 1038.)

This argument has also been forfeited as a result of Pfeiffer's inadequate appellate briefing. In her opening brief, Pfeiffer failed to formulate a coherent argument, supported by pertinent legal authority, explaining how and why the trial court erred. Instead, Pfeiffer presented a conclusory one-page argument, with citations to authority supporting the proposition that a party who obtains a dismissal *with prejudice* is

considered the prevailing party for purposes of obtaining attorney fees under section 527.6. (See, e.g., *Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1776-1777.) Pfeiffer, however, failed to make any substantive legal argument, with citation to supporting legal authority, explaining how and why a defendant (such as Smart) is not a prevailing party when (as here) a petition filed under section 527.6 is dismissed by the trial court *without prejudice* following a hearing on the merits. It is not our role to develop Pfeiffer's legal theories or arguments on appeal. We treat an issue as forfeited when, as here, an appellant makes a conclusory argument that is not supported with reasoned argument and citations to pertinent authority. (*City of Santa Maria v. Adam, supra,* 211 Cal.App.4th at p. 287; *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207.)

We reach the same conclusion with respect to Pfeiffer's alternative contention that the trial court abused its discretion by awarding Smart attorney fees in the unreasonable amount of $18,939. In the trial court, Pfeiffer only submitted a declaration in opposition to the fee motion, which merely asserted, without more, that the court should deny Smart's request for "exorbitant and unreasonable" attorney fees because Pfeiffer was "not responsible for any harassment." Pfeiffer presented no additional argument or legal analysis in support of her position. Nor did she present any evidence showing that the fees requested by Smart were unreasonable. Indeed, Pfeiffer made no effort whatsoever to challenge as unreasonable or unnecessary any of the specific tasks that were performed in connection with this matter, the number of hours expended on a particular task, or the billing rates of the persons who worked on this case.

On appeal, Pfeiffer argues for the first time that the hours expended on this case for certain matters were unnecessary and therefore unreasonable. Again, Smart points out that this objection was not raised in the trial court. We agree that Pfeiffer's conclusory argument in the trial court was insufficient to preserve this issue for appellate review. In challenging attorney fees as excessive and/or unreasonable, "it is the burden of the challenging party to point to the specific items challenged, with a sufficient

9

argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice. Failure to raise specific challenges in the trial court forfeits the claim on appeal." (See *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [failure to either attack the itemized billings with evidence that the fees claimed were not appropriate or obtain the declaration of an attorney with expertise in the procedural and substantive law to demonstrate that the fees claimed were unreasonable resulted in failure to demonstrate error].) " ' "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. . . ." ' " (*Id*. at p. 564.)

We note that Pfeiffer's alternative appellate contention has also been forfeited due to inadequate appellate briefing. Pfeiffer failed to provide sufficient legal authority and factual analysis to support this claim of error. In her opening brief, Pfeiffer cited one case setting forth general principles related to a request for attorney fees, but provided no meaningful legal analysis explaining how and why the trial court erred under the circumstances of this case. Indeed, Pfeiffer failed to explain why the fee award (which amounted to approximately half of the fees requested by Smart) was an abuse of discretion. Instead, Pfeiffer generally complains that the hours expended on certain matters were, in her view, unnecessary and/or unreasonable. In short, given Pfeiffer's failure to sufficiently develop her argument, we treat the matter as forfeited. (*Hernandez v. First Student, Inc*. (2019) 37 Cal.App.5th 270, 277.)

In sum, we conclude that Pfeiffer has forfeited her claims of error. But even if we were to overlook forfeiture, we see no basis for reversal. Pfeiffer initially contends the trial court erred as a matter of law by awarding Smart attorney fees because Smart was not the prevailing party within the meaning of section 527.6. This argument is predicated

10

on the theory that the trial court's dismissal of Pfeiffer's petition for a civil harassment restraining order *without prejudice* does not constitute a final judgment. As discussed *ante*, Pfeiffer has not cited any authority supporting her position. And, in any event, we see no reversible error in the trial court's implicit determination that Smart was the prevailing party under section 527.6, subdivision (s). Although Pfeiffer obtained an ex parte temporary restraining order against Smart pending a hearing on the merits, Pfeiffer's petition for a civil harassment restraining order was dismissed by the trial court without prejudice after the hearing. Under these circumstances, the trial court could have reasonably concluded that Smart was the prevailing party within the meaning of section 1032, subdivision (a)(4). (See *Cano v. Glover* (2006) 143 Cal.App.4th 326, 331 [a defendant is the prevailing party where the trial court orders an involuntary dismissal, regardless of whether dismissal is with or without prejudice].) Alternatively, the trial court could have reasonably concluded that, even if Smart was not the prevailing party under any of the enumerated grounds set forth in section 1032, subdivision (a)(4), Smart was the prevailing party because she prevailed on a "practical level." The record reflects that Smart achieved her litigation objective, which was the avoidance of an order granting Pfeiffer a permanent civil harassment restraining order. Realizing a litigation objective is a permissible reason to award attorney fees where, as here, "any party recovers other than monetary relief and in situations other than as specified" in section 1032, subdivision (a)(4). (See *Pirkig v. Dennis* (1989) 215 Cal.App.3d 1560, 1565, italics omitted.) In short, we see nothing in the record that would support the conclusion that the trial court erred in implicitly determining that Smart was the prevailing party. Finally, Smart was arguably the prevailing party under section 527.6 for an additional, independent reason: Pfeiffer did not *recover* any relief against Smart. (See § 1032, subd. (a)(4) ["prevailing party" includes "a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant"].)

11

Equally unavailing is Pfeiffer's contention that the trial court committed reversible error by awarding Smart attorney fees in the unreasonable amount of $18,939. "The determination of what constitutes the actual and reasonable attorney fees is committed to the sound discretion of the trial court." (*Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 228; *PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.) Smart submitted a declaration from her counsel and itemized billing records in support of her request for attorney fees in the amount of $36,461.50. The trial court did not award the full amount requested and denied Smart's request for a multiplier. Instead, the court awarded Smart approximately half of the fees she requested--$18,939. In doing so, the court explained that it carefully reviewed "the moving papers along with the totality of the court file." Pfeiffer asks us to reexamine the evidence presented to the trial court and come to a different conclusion. We decline to do so. (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1208 ["In applying the abuse of discretion standard of review, it is not the role of the appellate court to substitute its own view as to the proper decision"].) The question for us is simply whether the trial court's decision exceeded the bounds of reason, that is, whether it was arbitrary, capricious, or patently absurd. (*Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1240.) Given the limited record before us, we cannot reach such a conclusion.

## DISPOSITION

The order awarding Smart attorney fees and costs is affirmed.  Smart shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

/s/
Duarte, J.

We concur:

/s/
Robie, Acting P. J.

/s/
Ashworth, J. *

---

\* Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.