Filed 6/18/26  Kyles v. Vista Pacifica Enterprises CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ANITA KYLES,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>VISTA PACIFICA ENTERPRISES, INC.,<br><br>  Defendant and Respondent. | D086907<br><br><br><br>(Super. Ct. No. CVRI2302776) |

APPEAL from a judgment of the Superior Court of Riverside County, Chad W. Firetag, Judge.  Affirmed.

Workplace Justice Advocates, Tamara S. Freeze and Xinyue Liu, for Plaintiff and Appellant.

Varner & Brandt, Richard D. Marca and Alisha L. Maline, for Defendant and Respondent.

Anita Kyles was groped and punched by a patient at the locked institute for mental disease where she worked.  She sued her employer, Vista Pacifica Enterprises, Inc., for, among other things, sexual harassment and failure to prevent harassment under the California Fair Employment and

Housing Act and sought punitive damages. Vista won summary judgment on all causes of action.

On appeal, Vista again objects to Kyles' reliance on the attacking patient's medical records, which Kyles offers to show Vista knew of the patient's aggressive and sometimes sexually inappropriate behavior before the attack. We conclude that because Kyles failed to lay the required foundation to admit the records under the business records exception to the hearsay rule, we must disregard those medical records during our appellate review of the merits.

On the remaining admissible evidence, Kyles has not identified a genuine issue of material fact about whether Vista knew or should have known about the patient's harassing conduct or failed to take immediate and corrective action. Although Kyles told a nurse she would not take the at-issue patient's vitals because she was uncomfortable after he was argumentative with her and a male staff member earlier in her shift, it is insufficient evidence to show Vista should have known of sexually harassing conduct by that patient. And absent evidence the attack was foreseeable, Kyles has nothing to rebut the timeliness or reasonableness of Vista's responsive corrective action. Summary judgment was thus proper on the sexual harassment claim, which in turn dooms Kyles' failure to prevent harassment and punitive damages claims.

We therefore affirm.

## I.

## A.

Vista provides 24-hour care and treatment services for the elderly and mentally challenged adults through two facilities located on the same property. One is a locked institute for mental disease that houses patient-

residents "with a variety of psychiatric diagnoses, all of which represent severe impairment in emotional, social, and occupational functioning."  The other is a convalescent home, a skilled nursing facility for elderly adults with long-term care needs but not a locked institute for mental disease.

1.

Kyles started working as a certified nurse assistant at Vista's locked institute in late November 2022.  As part of her employment, Kyles received training on nonviolent crisis intervention, which covered the "appropriate staff approach towards an agitated resident, cycles of crisis, interventions, code amber, and debriefing."

2.

In early January 2023, Kyles worked the night shift from 11:30 p.m. to 7:00 a.m.  After clocking in, she discovered a male patient in the staff breakroom, where patients were not permitted.  Kyles told the patient he was not allowed there, but he responded, "'Yes, I can be in here.'"  Kyles asked a nearby male staff member to escort the patient back to his room.  Kyles described the patient as "irate" and said he was being "combative" and "fussy" with the male staff member, telling him, "'You can't tell me where to go.'"  The staff member got the patient back to his room without touching him.

With the patient back in his room, Kyles' first task was to take vitals for the patients in that unit.  Kyles told the nurse in the unit that she was not "comfortable" taking the vitals of the patient who had entered the staff breakroom based on his behavior, so she asked the nurse to "come in there with me to do it."  The nurse responded she could not because she had to finish getting patients' medications ready.  Kyles informed the nurse she

3

"cannot go in" that patient's room or take his vitals while he was awake because she was "not feeling comfortable."

Kyles proceeded to take the vitals for the thirteen other patients in the unit. While doing so, the patient from the breakroom sometimes "peeked out" of his room. At one point, he told Kyles, "'I got to see you in my room.'" After Kyles submitted the other patients' vitals to the nurse, the nurse asked her to repeat the heart rate reading for one patient.

While Kyles stood "kind of in the doorway" of the other patient's room taking his heart rate, the patient from the breakroom attacked her. He "came up behind" her and bear-hugged her, pinning her arms down. The patient then "started groping" Kyles' breast and vagina. Kyles implemented some of her training by calling a "Code Amber" to signal for immediate help and by moving her elbows to dislodge the patient's hold on her. As the patient let go of Kyles, he punched her right eye, causing the lens to fall out of her glasses. The attacking patient then "ran to his room."

Once other staff members arrived, Kyles reported that the patient "'just attacked'" her. Kyles testified she was "furious and crying and upset" and wanted to leave. A supervising nurse took Kyles to another room and had her fill out an accident report, after which Kyles was permitted to go home.

3.

Kyles never again encountered the patient who attacked her. According to Vista, the patient "was counseled on his conduct" and transferred to a third-party facility within one month.

Kyles submitted a series of doctor's notes placing her off work through the end of April, which Vista accommodated. Eventually, Vista received a progress report indicating Kyles could return to work in mid-April so long as she worked at an "'alternate facility.'" Vista thus offered Kyles a certified

4

nurse assistant position at the convalescent facility starting in mid-June. According to Vista, Kyles rejected this offer and stopped responding to Vista's outreach, so per policy Vista recorded Kyles as voluntarily quitting effective mid-June 2023.

B.

As relevant here, Kyles sued Vista for FEHA sexual harassment, FEHA failure to prevent harassment, and other causes of action not on appeal. The trial court granted Vista's motion for summary judgment and entered judgment in its favor after finding no triable issue of fact as to any cause of action or Kyles' punitive damages claim. Among other things, the court found (1) Vista had "met its burden of showing [Kyles] cannot establish that it knew or should have known of [the attacking patient's] harassment and failed to take immediate and appropriate corrective action" and (2) Kyles "presents no evidence to the contrary."

II.

A.

In opposing summary judgment, Kyles' counsel submitted a declaration attaching the attacking patient's medical records, which Kyles argues show (1) Vista was aware of multiple incidents of sexual or other harassment by this patient before he attacked Kyles and (2) Vista's alleged counseling of the patient was "ineffective and inappropriate." The trial court overruled Vista's objections to the medical records after finding the exhibits "sufficiently authenticated" but without discussing Vista's hearsay objection. Vista renews its objection to the admissibility of these records and contends the trial court erred in overruling its objections based on lack of foundation, lack of personal knowledge, and hearsay. Vista argues the records "are hearsay and do not fall within any of the recognized exceptions" because Kyles has not

5

provided "any foundation as to who, when, why, and how they [were] created and maintained." In response, Kyles asserts that a proper foundation was laid to admit the medical records under the business records exception to the hearsay rule.[1] We conclude the requisite foundation is lacking for the business records exception to the hearsay rule.

Parties must submit admissible evidence to support or oppose summary judgment. (Code Civ. Proc., § 437c, subd. (d).) An out-of-court statement offered for the truth of the matter asserted is inadmissible hearsay unless subject to an exception. (Evid. Code, § 1200.) Under the business records exception, a writing is not inadmissible hearsay if (1) the writing was made in the regular course of business; (2) the writing was made at or near the time of the event recorded; (3) a qualified witness testifies to the writing's identity and mode of preparation; and (4) the sources of information and method and time of preparation indicate its trustworthiness. (Evid. Code, § 1271.) The party offering the evidence—here, Kyles—bears the burden to establish that these foundational requirements have been met. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1011.) We review the trial court's ruling for abuse of discretion. (*Ibid.*)

---

[1]    Significantly, in her reply brief, Kyles did not assert any valid nonhearsay purpose for the medical records, like notice of the patient's dangerous and potentially harassing behavior. Nor did she argue that the medical records were unnecessary because Vista failed to meet its initial burden of showing it lacked knowledge of the patient's dangerous tendencies. To the extent Kyles raised these contentions for the first time at oral argument, we decline to consider them. (See, e.g., *Goldstein v. Superior Court* (2023) 93 Cal.App.5th 736, 746, fn. 8; *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 ["We do not consider arguments that are raised for the first time at oral argument."].)

Kyles claims she established the requisite foundation in two ways. First, through Vista's verified discovery responses identifying these records as responsive to a request for documents reflecting any "history of aggressive behavior by [the attacking patient] towards any person from 2020 to January 9, 2023." Second, through a declaration by Vista's administrator attesting that he is "familiar with the patient-residents' records . . . maintained by" Vista. These offerings fall short of satisfying the business records exception's foundational requirements.

Kyles emphasizes that "California courts consistently hold that medical and clinical records easily satisfy these requirements." That much is true, but only "assuming a custodian of records or other duly qualified witness provides proper authentication to meet the foundational requirements of the hearsay exception." (*People v. McVey* (2018) 24 Cal.App.5th 405, 414.) The business records exception ""requires a witness to testify as to the identity of the record and its mode of preparation *in every instance*."" (*Bhatt v. State Dept. of Health Services* (2005) 133 Cal.App.4th 923, 929, italics added.) "The key to establishing the admissibility of a document made in the regular course of business is proof that the person who wrote the information or provided it had knowledge of the facts from personal observation." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322.)

We lack such proof here. Vista's administrator's general statement about being "familiar" with patient medical records is not enough. It does not prove the persons who wrote these various entries in the medical records "had knowledge of the facts from personal observation" and says nothing about the entries' mode of preparation. (*Jazayeri*, 174 Cal.App.4th at p. 322.) Because Kyles failed to establish a valid basis to admit the records over Vista's hearsay objection, we must disregard those records on appeal.

B.

Kyles argues summary judgment should have been denied on her sexual harassment claim because a genuine issue of material fact exists as to whether Vista knew or should have known of the attacking patient's harassment and failed to take immediate and appropriate corrective action. Based on the admissible record evidence, we disagree.

Summary judgment serves to "cut through the parties' pleadings" to "determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) A court should grant summary judgment if no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c(c).) "On appeal, we examine the record de novo, viewing the evidence in the light most favorable to the plaintiff as the losing party and resolving any evidentiary doubts or ambiguities in [the plaintiff's] favor." (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620.)

Actionable FEHA harassment requires unwelcome conduct based on a protected characteristic that is sufficiently severe or pervasive as to alter the conditions of the plaintiff's employment and create a hostile or abusive work environment. (*Bailey*, 16 Cal.5th at p. 627.) The plaintiff must also establish that the offending conduct was imputable to the employer. (*Ibid.*) When the harasser is a nonemployee, the employer cannot be held liable unless it "knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (Gov. Code, § 12940(j)(1).) Appropriate corrective action has been construed to mean action reasonably calculated to end the harassment. (*Bailey*, at p. 635.) "The reasonableness of the remedy

depends on its ability to stop the current harassment and deter future harassment." (*Ibid.*)

1.

Absent the inadmissible medical records, Kyles points to the events of her shift before the patient attacked her to argue Vista was "fully aware of [the patient's] escalating behavior." She claims the patient "assaulted" her in the breakroom and "stalked" and "threatened" her while she took other patients' vitals. Kyles asserts she reported feeling "unsafe checking on residents alone" but Vista "dismissed" her concerns and "required [Kyles] to continue working unaccompanied."

Even when viewed in the light most favorable to her, Kyles' account of events overstates the record. Kyles testified that she told the patient he was not allowed to be in the breakroom and he disagreed but ultimately followed a male staff member back to his room after some verbal protest. She does not explain how that interaction amounts to the patient assaulting her or harassing her based on her sex or gender. Based on the breakroom interaction, Kyles told a nurse she was not comfortable taking *that specific* patient's vitals—not *all* patients, as suggested in her appellate briefing. When the nurse was not available to accompany her to that patient's room, Kyles said she would not take his vitals while he was awake, and nothing in the record suggests Vista required her to do otherwise. Similarly, no record evidence indicates Kyles informed anyone at Vista about the patient "peek[ing] out" of his room or telling her, "'I got to see you in my room'" before the attack.

In sum, Kyles presents no admissible evidence that Vista knew or should have known of the attacking patient's sexually harassing conduct before he groped and punched Kyles. Her case is thus unlike those she cites

9

in which the employee repeatedly informed her employer of frequent discriminating or harassing conduct yet the employer disregarded or otherwise failed to address the complaints. (*Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 56; *Freitag v. Ayers* (9th Cir. 2006) 468 F.3d 528, 533-534.)

2.

Likewise, Kyles has not convinced us that a triable issue of material fact exists about whether Vista failed to take immediate and appropriate corrective action once it learned the patient assaulted her.

Her argument that we should discount Vista's actions after the attack because Vista should have prevented it from happening depends on the attack being foreseeable. To establish foreseeability, Kyles largely relies on the inadmissible medical records that we must disregard. The admissible evidence, as discussed above, falls short of creating any genuine issue of whether Vista knew or should have known in advance of any sexual harassment by the attacking patient. Thus, we are unpersuaded by Kyles' claim that Vista "directly facilitated" the "escalation" of this patient's "ongoing harassment" by dismissing Kyles' concerns about the patient's behavior in the breakroom.

Without any admissible evidence of Vista being able to foresee the attack, we have no evidence rebutting the reasonableness of Vista's post-attack actions, including (1) counseling and transferring the patient to a third-party facility and (2) offering Kyles her same job at the nearby convalescent facility. In such a situation, summary judgment is proper. (See *Campbell v. Hawaii Department of Education* (9th Cir. 2018) 892 F.3d 1005, 1017 [analogous federal claim].) Because summary judgment on Kyles'

10

sexual harassment claim was correct on this basis, we do not need to address Kyles' other arguments to the contrary.

Without a surviving harassment claim, Kyles' derivative failure to prevent harassment claim fails as a matter of law. (See *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1166.) And because we affirm summary judgment, Kyles' claim for punitive damages is moot. (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 2.)

## III.

We affirm. The parties shall bear their own costs on appeal.


CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


RUBIN, J.


11